1  **Brandon Callier**
**Callier74@gmail.com**
2  **Plaintiff in Pro Se**
**1490 A George Dieter Drive, #174**
3  **El Paso, TX 79936**
**(915) 383-4604**
4

FILED

CLERK, U.S. DISTRICT COURT

3/16/25

CENTRAL DISTRICT OF CALIFORNIA

BY _____ MRV _____ DEPUTY

DOCUMENT SUBMITTED THROUGH THE
ELECTRONIC DOCUMENT SUBMISSION SYSTEM

5

6

7

8                **IN THE UNITED STATES DISTRICT COURT**

9        **CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION**

10

| | |
|---|---|
| 11  BRANDON CALLIER | ) CASE No.: 2:24-cv-10131-MEF-JC |
| 12                      Plaintiff | ) |
| 13  vs. | ) **AMENDED COMPLAINT FOR:** |
| 14  WIDE MERCHANT INVESTMENT INC., a | )  1. VIOLATIONS OF THE TELEPHONE CONSUMER PROTECTION ACT, 47 U.S.C. § 227 |
| 15  dissolved California Corporation, WIDE | )  2. VIOLATIONS OF THE TEXAS BUSINESS AND COMMERCE CODE, § 302.101 |
| 16  MERCHANT INVESTMENT HOLDINGS, | ) |
| 17  INC., a Nevada Corporation, BLUE COAST | )  3. SUCCESSOR LIABILITY |
| 18  SERVICE, INC. a Nevada Corporation, and | ) **Jury Trial Demanded** |
| 19  DAVID BOEM JOON KIM, an Individual | ) |
| 20 | ) |
| 21                      Defendants | |

22         Plaintiff, Brandon Callier, files this Amended Complaint under the Telephone Consumer

23  Protection Act, 47 U.S.C. § 227, against Defendants Wide Merchant Investments Inc., a

24  dissolved California Corporation ("WMI"), Wide Merchant Investment Holdings Inc., a Nevada

25  Corporation, Blue Coast Service, Inc. a Nevada Corporation, and David Boem Joon Kim, an

26  Individual ("Mr. Kim") (collectively "Defendants"), and alleges based on personal knowledge

27  and information and belief, as follows:

28                              **INTRODUCTION**

1.      As the Supreme Court has explained, Americans passionately disagree about many things. But they are largely united in their disdain for robocalls. The government receives a staggering number of complaints about robocalls 3.7 million complaints in 2019. The States likewise field a constant barrage of complaints. For nearly 30 years, representatives in Congress have been fighting back. As relevant here, the Telephone Consumer Protection Act of 1991, known as the "TCPA", generally prohibits robocalls to cell phones and home phones. *See Barr v. Am. Ass'n of Political Consultants*, 140 S. Ct. 2335, 2343 (2020).

2.      Plaintiff brings this action against Defendants for violations of the TCPA, 47 U.S.C. § 227, as well as the Texas Business and Commerce Code, §302.101 and §305.053

3.      Plaintiff alleges that Defendants contacted Plaintiff via telephone for the purposes of promoting Defendants' funding services.

4.      Plaintiff never consented to any of these calls, which were placed to him for sales purposes.

## PARTIES:

5.      The Plaintiff is BRANDON CALLIER ("Callier"), a natural person, and was present in Texas for call calls, in this case in El Paso County.

6.      Defendant WIDE MERCHANT INVESTMENT, INC. ("Wide Merchant" or "WMI") is a dissolved corporation that was organized and existing under the laws of California, and maintains its principal office location in Los Angeles County, and can be served via registered agent David Kim at 3580 Wilshire Boulevard, Suite 160, Los Angeles, California 90010. Wide Merchant filed a Certificate of Dissolution – California Corporation Termination on November 13, 2023 with the California Secretary of State's Office.

7.      Defendant WIDE MERCHANT INVESTMENT HOLDINGS, INC. is a corporation organized and existing under the laws of Nevada, and maintains its principal office location in Los Angeles County at 3580 Wilshire Blvd. Suite 160, Los Angeles, CA 90010, and can be served via registered agent Cogency Global Inc., 321 W. Winnie Lane

#104, Carson City, NV 89703. Wide Merchant Investment Holdings, Inc. is the successor-in-interest to Defendant Wide Merchant Investment, Inc.

8.    Defendant BLUE COAST SERVICE, INC. ("Blue Coast" or "BCS") is a Nevada corporation that is registered to do business as a Foreign Corporation in California, and may be served via its registered agent David Kim at 3580 Wilshire Blvd Ste 160, Los Angeles, CA 90010. Blue Coast is affiliated with Wide Merchant.

9.    Defendant DAVID BOEM JOON KIM ("Kim") is a natural person, resident of the Central District of California, and Chief Financial Officer of Wide Merchant Investment Inc. and Wide Merchant Investment Holdings Inc. and may be served at 428 S. June Street, Los Angeles, California 90020. Kim is the Chief Executive Officer and Registered Agent of Wide Merchant Investment Inc., Wide Merchant Investment Holdings, Inc., and Blue Coast.

10.    Defendants are each a person as defined by 47 U.S.C. § 153(39).

11.    Defendants acted through their agents, affiliates, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives, and/or insurers.

## JURISDICTION AND VENUE

12.    Jurisdiction. This Court has federal-question subject matter jurisdiction over Plaintiff's TCPA claims pursuant to 28 U.S.C. §1331 because the TCPA is a federal statute. *Mims v. Arrow Fin. Servs., LLC*, 565 U.S. 368, 372 (2012).

13.    This Court has supplemental subject matter jurisdiction over Plaintiff's claim arising under Texas Business and Commerce Code 305.053 because that claim arises from the same nucleus of operative fact, i.e., Defendants' telemarketing robocalls to Plaintiff; adds little complexity to the case; and doesn't seek money damages, so it is unlikely to predominate over the TCPA claims.

14.    Personal Jurisdiction. This Court has general personal jurisdiction over the Defendants. Defendant Wide Merchant Investment, Inc. was incorporated in the State of California in 2010. Defendant Wide Merchant Investment Holdings, Inc. is a Nevada corporation that maintains its principal place of business in Los Angeles County, California.

Defendant Blue Coast is registered to do business in the State of California as a Foreign Corporation (out-of-state) and remains in good standing, having filed its most recent Statement of Information with the California Secretary of State's Office on May 3, 2024. Defendant Mr. Kim is and was at all times a resident of the Central District of California, in the County of Los Angeles, and is a corporate officer of Wide Merchant Investment, Inc., Wide Merchant Investment Holdings, Inc., and Blue Coast. Therefore, the Defendants may be regarded as "at home" in this District. "For an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile; for a corporation, it is an equivalent place, one in which the corporation is fairly regarded as at home." *Goodyear Dunlop Tires Operations, S.A. v. Brown,* 564 U.S. 915, 924 (2011). "A corporation is typically subject to general jurisdiction in its place of incorporation or principal place of business. *Abitbol v. Homelink, LLC*, No. 2:20-cv-03654-RGK-PJW, 2020 WL 5102149, at *2 (C.D. Cal. July 28, 2020) (citing *Goodyear*, 564 U.S. at 924).

15.    Venue.  Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(1)-(2) because a substantial part of the events giving rise to the claims—the calls and sale of goods and services via telemarketing to numbers on the National Do-Not-Call Registry, including the Plaintiff—occurred in this District because, among other things, the calls were made from this District to other parts of the country, including into Texas where the Plaintiff resides.

**STATUTORY BACKGROUND: THE TCPA**

16.    In 1991, Congress enacted the TCPA to regulate the explosive growth of the telemarketing industry. In so doing, Congress recognized that "[u]nrestricted telemarketing ... can be an intrusive invasion of privacy[.]" Telephone Consumer Protection Act of 1991, Pub. L. No. 102-243, § 2(5) (1991) (codified at 47 U.S.C. § 227).

The TCPA Prohibits Automated Telemarketing Calls to Protected Numbers

17.    The TCPA makes it unlawful "to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using an automatic telephone dialing system or an artificial or prerecorded voice ... to any telephone

number assigned to a ... cellular telephone service ... or any service for which the called party is charged for the call." See 47 U.S.C. § 227(b)(l)(A)(iii).

18.     Congress singled out these services for special protection because Congress realized their special importance in terms of consumer privacy and therefore protected them (as in the case of cellular phones). See *Barr v. Am. Ass'n of Pol. Consultants, Inc*, 140 S. Ct. 2335, 2363, (2020) (Gorsuch, J. & Thomas, J., concurring in part and dissenting in part).

19.     The TCPA provides a private cause of action to persons who receive calls in violation of 47 U.S.C. § 227(b)(l)(A). See 47 U.S.C. § 227(b)(3).

20.     According to findings by the Federal Communication Commission ("FCC"), the agency Congress vested with authority to issue regulations implementing the TCPA, such calls are prohibited because, as Congress found, automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls, and such calls can be costly and inconvenient.

21.     This cause of action applies to users of any one of the four protected services (pager, cellular, specialized mobile radio [i.e. radiotelephony locator beacons or dispatch systems], or another radio common carrier service [i.e. ship-to-shore or air-to-ground]), or any service, including residential, VoIP, and landline services, for which the called party is charged for the call. See *Perrong v. Victory Phones LLC*, No. CV 20-5317, 2021 WL 3007258, at *6 (E.D. Pa. July 15, 2021).

22.     "Non-emergency prerecorded voice or autodialed calls to [the destinations enumerated in 47 U.S.C. § 227(b)(1)(A)] are permissible only with the prior express consent of the called party." This includes any non-consensual calls made for non-emergency purposes, regardless of whether or not they are informational, political, telemarketing, telephone solicitations, or similar such calls. See FCC Enforcement Advisory: *Tel. Consumer Prot. Act Robocall & Text Rules - Biennial Reminder for Pol. Campaigns About Robocall & Text Abuse*, 31 FCC Rcd. 1940, 1941 n.6 (2016) [hereinafter FCC Advisory].

23.     The FCC also recognized that "wireless customers are charged for incoming calls whether they pay in advance or after the minutes are used." I*n re Rules and Regulations*

*Implementing the Tel. Consumer Prot. Act of 1991*, CG Docket No. 02-278, Report and
Order, 18 F.C.C. Rcd. 14014, 14115 ¶ 165 (2003).

24.    In 2013, the FCC required prior express written consent for all autodialed or
prerecorded telemarketing calls ("robocalls") to wireless numbers and residential lines.
Specifically, it ordered that:

> [A] consumer's written consent to receive telemarketing robocalls must be signed
> and be sufficient to show that the consumer: (1) received "clear and conspicuous
> disclosure" of the consequences of providing the requested consent, i.e., that the
> consumer will receive future calls that deliver prerecorded messages by or on
> behalf of a specific seller; and (2) having received this information, agrees
> unambiguously to receive such calls at a telephone number the consumer
> designates.[] In addition, the written agreement must be obtained "without
> requiring, directly or indirectly, that the agreement be executed as a condition of
> purchasing any good or service.[]" In the Matter of Rules & Regulations
> Implementing the Tel. Consumer Prot. Act of 1991, 27 F.C.C. Rcd. 1830, 1844
> (2012) (footnotes omitted).

25.    A text message is considered a "call" under the TCPA. *Campbell-Ewald Co. v.
Gomez*, 136 S. Ct. 663 (2016).

The National Do-Not-Call Registry

26.    The National Do Not Call Registry allows consumers to register their telephone
numbers and thereby indicate their desire not to receive telephone solicitations at those
numbers. See 47 C.F.R. § 64.1200(c)(2). A listing on the Registry "must be honored
indefinitely, or until the registration is cancelled by the consumer or the telephone number is
removed by the database administrator." Id.

27.    The TCPA and implementing regulations prohibit the initiation of telephone
solicitations to residential telephone subscribers to the Registry. 47 U.S.C. § 227(c); 47
C.F.R. § 64.1200(c)(2).

28.    The TCPA provides a private cause of action to persons who receive calls in
violation of § 227(c) or a regulation promulgated thereunder. 47 U.S.C. § 227(c)(5).

29.    Separately, the TCPA bans making telemarketing calls without a do-not-call
policy available upon demand. 47 U.S.C. § 227(c); 47 C.F.R. § 64.1200(d)(1).[1]

---

[1] *See* Code of Federal Regulations, Title 47, Parts 40 to 60, at 425 (2017) (codifying a June 26,
2003 FCC order).

30.     The TCPA bans making telemarketing calls without a do-not-call policy available upon demand. 47 U.S.C. § 227(c); 47 C.F.R. § 64.1200(d)(1).[2]

31.     *In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 27 FCC Rcd. 1830, 1844 ¶ 33 (2012) (footnote and internal quotation marks omitted). FCC regulations "generally establish that the party on whose behalf a solicitation is made bears ultimate responsibility for any violations." *In the Matter of Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 10 FCC Rcd. 12391, 12397 ¶ 13 (1995).

32.     The FCC confirmed this principle in 2013 when it explained that "a seller … may be held vicariously liable under federal common law principles of agency for violations of either section 227(b) or section 227(c) that are committed by third-party telemarketers." *In the Matter of the Joint Petition Filed by Dish Network, LLC*, 28 FCC Rcd. 6574, 6574 ¶ 1 (2013).

<u>The TCPA imposes personal liability on individuals who participate in or commission telemarketing calls.</u>

33.     A corporate officer involved in the telemarketing at issue may be personally liable under the TCPA. *E.g.*, *Jackson Five Star Catering, Inc. v. Beason*, Case No. 10-10010, 2013 U.S. Dist. LEXIS 159985, at *10 (E.D. Mich. Nov. 8, 2013) ("[M]any courts have held that corporate actors can be individually liable for violating the TCPA where they had direct, personal participation in or personally authorized the conduct found to have violated the statute." (internal quotation marks omitted)); *Maryland v. Universal Elections*, 787 F. Supp. 2d 408, 415 – 16 (D. Md. 2011) ("If an individual acting on behalf of a corporation could avoid individual liability, the TCPA would lose much of its force."); *Texas v. Am. Blastfax, Inc.*, 164 F. Supp. 2d 892, 898 (W.D. Tex. 2001)(individuals who were the "guiding spirits" and the "central figures" behind the TCPA violations and who controlled the day-to-day operates of the company that violated the TCPA can be held liable for those violations).

---

[2] *See* Code of Federal Regulations, Title 47, Parts 40 to 60, at 425 (2017) (codifying a June 26, 2003 FCC order).

**The Texas Business and Commerce Code 305.053**

34.     The Texas Business and Commerce code has an analogous portion that is related to the TCPA and which was violated in this case.

35.     Plaintiff may seek damages under this Texas law for violations of 47 U.S.C. § 227 or subchapter A and seek $500 in statutory damages or $1500 for willful or knowing damages.

**The Texas Business and Commerce Code § 302.101**

36.     The Texas Business and Commerce Code makes it illegal to place solicitation phone calls to a Texas resident without first having a registration certificate and bond on file with the Texas Secretary of State.

37.     The actions of the Defendants violated the Texas Business and Commerce Code 302.101 by placing solicitation phone calls to a Texas resident without having registration certificate and bond on file with the Texas Secretary of State.

38.     Texas Business and Commerce Code § 302.101 provides a private right of action. A violation of Chapter 302 "is a false, misleading, or deceptive act or practice under Subchapter E, Chapter 17" and is enforceable as such: "A public or private right or remedy prescribed by Subchapter E, Chapter 17, may be used to enforce [Chapter 302." Tex. Bus. & Com. Code § 302.303.

39.     The use or employment by any person of a false, misleading, or deceptive act or practice" causes "economic damages or damages for mental anguish." Tex. Bus. & Com. Code § 17.50.

40.     Texas Business and Commerce Code §302.101 states that a person (1) "may not make a telephone solicitation" (a) "from a location in [Texas]" or (b) "to a purchaser located in [Texas]," (2) "unless the [person] holds a registration certificate for the business location from which the telephone solicitation is made." Tex. Bus. & Com. Code § 302.101(a).

41.     Under Texas Business and Commerce Code § 302.302, Plaintiff is entitled to seek damages of up to $5000 per violation of §302.101.

**FACTUAL ALLEGATIONS**

42.     Plaintiff's personal telephone number has been on the National Do-Not-Call Registry since December 2007.

43.     Plaintiff previously filed a lawsuit in the United States District Court for the Western District of Texas, captioned *Brandon Callier v. Wide Merchant Investment, Inc. et. al*, Case No. 3:22-cv-00123-FM ("the Texas Action").

44.     The Texas Action was dismissed by the Western District of Texas because the Texas court did not have personal jurisdiction over WMI and Kim. *See* Case No. 3:22-cv-00123-FM, Document No. 44 (Order Granting Defendants Wide Merchant Investment, Inc and David Boem Joon Kim's Motion to Dismiss).

45.     The Texas Action was never decided on the merits, and Plaintiff hereby re-files the case in this Court which unquestionably possesses general jurisdiction over the Defendants.

46.     Plaintiff has received nearly one hundred phone calls within a twelve-month period to his personal cell phone (915) 383-4604 from a company named Synergy Financial ("Synergy") calling on behalf of Defendants Blue Coast and Wide Merchant soliciting business funding.

**Synergy is Hired to Telemarket and Obtain Leads for BCS and WMI**

47.     WMI and BCS offer a financial product called a "Merchant Cash Advance" ("MCA"), in which the private merchant advance company offers small businesses operating capital by purchasing their invoices for an upfront cash advance and receiving a portion of future sales in return.

48.     In order to generate new MCA customers, WMI and BCS utilize third parties to place telemarketing calls on their behalf.

49.     Upon information and belief Synergy Financial is an offshore company based out of Australia.

50.     Synergy is out of the reach of the laws of the United States and operates as an unaccountable entity whose identity is actively hidden by Wide Merchant and Blue Coast.

51.     Synergy is an Independent Sales Organization ("ISO") that makes phone calls at

the direction of, and for the benefit of, WMI and Blue Coast.

52.    Blue Coast and Wide Merchant are affiliated companies owned and operated by the same owner, Chief Executive Officer, and manager, Mr. Kim.

53.    Through information and belief, on August 18, 2020, Blue Coast entered into an agreement with Synergy to make solicitation telemarketing phone calls on behalf of Blue Coast and Wide Merchant. Synergy makes these phone calls on behalf of Blue Coast and Wide Merchant for compensation as part of an agreed-upon incentive structure.

54.    Through information and belief, Synergy is compensated on a per-lead basis and is incentivized to ignore do not call requests and the National Do-Not-Call Registry.

55.    Upon information and belief, there was a contractual agreement between Synergy and Blue Coast, entitled "Independent Agent Marketing and Referral Agreement" (hereinafter the "Agreement").

56.    The Agreement between Synergy and Blue Coast is written in a way that is designed to help facilitate the evasion of liability under the TCPA by Blue Coast and its affiliated sister company, Wide Merchant, for the illegal telemarketing calls placed by Synergy on behalf of BCS and WMI.

57.    The Agreement states that Synergy would market and obtain leads for referral to BCS, in exchange for monetary compensation of an undisclosed amount per lead.

58.    The written Agreement did not describe the methods by which Synergy would generate leads for BCS.

59.    While not specifically delineated in the written Agreement, Synergy and BCS had a clear understanding that Synergy would be engaging in outbound telemarketing in its efforts to obtain new leads and referrals for BCS and WMI.

60.    Telemarketing to generate new customers is an essential part of a Merchant Cash Advance ("MCA") business's model.

61.    Without outbound telemarketing calls to promote their products and services to new potential customers, an MCA company cannot remain competitive in the marketplace because they need to consistently fund new deals in order to remain profitable.

62.     Synergy engaged in a telemarketing campaign to drum up potential leads for referral to BCS, and in doing so, it disregarded the National Do-Not-Call Registry and the TCPA's rules and regulations.

63.     Synergy's marketing efforts to generate leads and referrals for BCS and WMI were exclusively done via telemarketing.

64.     BCS and WMI knew, or should have known, that Synergy was placing outbound telephone solicitation calls for its marketing campaign on their behalf.

65.     When Synergy would send a lead to BCS, this would include a loan application, including the loan amount requested, as well as business bank statements.

66.     Wide Merchant and BCS provided Synergy with the minimum requirements to obtain a merchant cash advance through Wide Merchant.  These requirements include, but were not limited to: minimum monthly revenue, minimum credit score, length of time in business, availability of a checking account, existing bankruptcy, and the current status of any existing debt or merchant cash advances.

67.     BCS would then refer all qualified leads generated by Synergy to WMI, who would attempt to sign up new customers for its merchant cash advance products and services.

68.     Blue Coast and Wide Merchant instructed Synergy on what states to target for solicitation calls and what hours to make the phone calls.

69.     Synergy commissioned a series of solicitation phone calls at the direction, instruction, and guidance of BCS and Wide Merchant to meet the criteria outlined above.

70.     On March 15, 2022, Plaintiff applied for a loan and submitted an application to Synergy for the sole purpose of identifying the United States-based company on whose behalf Synergy was placing the phone calls. Plaintiff was not interested in a loan.

71.     On March 17, 2022, at 5:24 PM as a direct and approximate result of the phone calls Plaintiff received from Synergy, and the application Plaintiff submitted to Synergy, Plaintiff received a contract for $40,000 directly from WMI via an email from info@widemerchant.com.  Exhibit A. Exhibit A1.

72.     On March 18, 2022, 9:33 AM Plaintiff received a phone call from a Synergy

representative and had the following phone conversation.

    Synergy representative: "Did you receive the contract yesterday?"
    Plaintiff: "Who is it coming from?  What am I looking for in my email?"
    Synergy representative: "It should be coming from Wide Merchant and it's a DocuSign contract."
    Plaintiff: "Wide Merchant?"
    Synergy representative: "Yes, Wide Merchant, one of our **subsidiary companies**.  They should be sending you the contract from DocuSign.  It was sent yesterday at night.  I mean yesterday late afternoon."
    Plaintiff: "I got a contract that came in at 5 AM this morning. I just looked in my email."
    Synergy representative: "And how much is it for?"
    Plaintiff: "I haven't opened it up.  I just looked on my phone.  I just searched Wide Merchant on my phone.  So I haven't opened it up."
    Synergy representative: "Yeah, yeah, so that should be the one if its Wide Merchant for $40,000, that should be the one.  We're waiting on you to sign it."

73.    Plaintiff has a recording of the telephone conversation in the above paragraph made consistent with Texas law.

74.    On March 18, 2022, as a direct and proximate result of the phone calls Plaintiff received from Synergy, Plaintiff received a contract directly from WMI via an email from info@widemerchant.com.  Exhibit B.

75.    On March 21, 2022, as a direct and proximate result of the phone calls Plaintiff received from Synergy, Plaintiff received a contract directly from WMI via an email from info@widemerchant.com.  Exhibit C.

76.    On March 21, 2022, Plaintiff responded to a follow-up text message received by a representative from Synergy named Aaron Cruz that states as follows:

    Aaron: "Any updates on the signed contract? Should I void the contract?" 9:10 AM
    Plaintiff: "I am traveling" 2:57 PM
    Aaron: "Should I void the offer then?" 2:57 PM
    Plaintiff: "Yes. I'm tired of the constant calls. Please don't call again."  2:57 PM
    Aaron: "Why would you be tired?  You did not update me anything (sic) on the contract that was released last week.  Very unprofessional behavior from you." 2:58 PM
    Plaintiff: "Didn't I just tell you not to contact me"?  3:00 PM
    Aaron: "What would you do?  Why did you waste our time?" 3:01 PM

77.    Aaron continued to text and call Plaintiff fourteen times within 30 minutes after Plaintiff explicitly advised Aaron to stop calling.

78.     On March 23, 2022, as a direct and approximate result of the phone calls Plaintiff received from Synergy, Plaintiff received a contract directly from WMI via an email from info@widemerchant.com.  Exhibit D.

79.     On March 29, 2022, as a direct and approximate result of the phone calls Plaintiff received from Synergy, Plaintiff received a contract directly from WMI via an email from info@widemerchant.com.  Exhibit E.

80.     Defendant WMI continued to solicit Plaintiff by sending Plaintiff contract offers on March 23, 2022, and March 29, 2022, after Plaintiff had informed their representative not to contact Plaintiff anymore and Plaintiff was not interested in their services.

81.     On March 21, 2022, Plaintiff received a phone call from Cruz informing Plaintiff he simply needed to do the "funding call."

82.     The funding call is a process whereby the lender, in this case, WMI, in coordination with Synergy directs the borrower to the WMI website to log into "DecisionLogic" in order to verify the borrower's banking information.

83.     As part of the "funding call" process, the ISO, in this case, Synergy, schedules a three-way call with the lender, in this case, WMI, and the borrower.  The borrower, while on the phone with the ISO (Synergy) and lender (WMI), verifies their bank account by logging into DecisionLogic directly from the WMI website.  It is at this point that WMI verifies the banking information and funds the loan.

84.     WMI receives the borrower's username and password for their business bank account during the DecisionLogic process. WMI then logs into the bank account and verifies the bank account is not negative, has a balance at least five times the daily payment, and has not been recently funded with any other MCA loans.

85.     WMI calls the borrower after the DecisionLogic process and goes over the terms of the contract with the borrower.  Once this call is completed WMI funds the borrower by a wire into their bank account.

86.     WMI works in direct coordination with Synergy for bank verification because the bank account is the means by which WMI drafts its payments from the borrower.

87.    WMI directly participates in the funding process by sending the borrower the loan contract directly from WMI and further participates by controlling the funding process during the Decision`Logic bank verification process.

88.    WMI exercises control over Synergy by mandating the requirement of bank verification, the timing of the bank verification, the manner of the bank verification, and the requirement that the bank verification is done on the WMI website, https://www.widemerchantgroup.com, via the DecisionLogic hyperlink on the WMI website. Exhibit F. WMI provides the platform and software for Synergy to verify banking information.  The verification of bank information is the final step in the loan process Synergy initiates by making solicitation phone calls at the direction of, and for the benefit of WMI.

89.    WMI does not give Synergy or any of their ISOs the opportunity to do the bank verification independently of WMI.  WMI mandates the bank verification be completed on the WMI website after Synergy refers the client to BCS, who in turn refers its leads to WMI.

90.    Synergy calls potential borrowers at the direction of BCS and WMI and solicits MCAs at the direction of BCS and WMI.  Synergy collects information from the solicited consumer at the direction of BCS WMI.  Synergy then collects an application from the consumer and delivers that information directly to BCS WMI for processing.

91.    After receiving the application from Synergy, WMI processes the application and emails the contract directly to the borrower.

92.    Synergy does not make phone calls on behalf of BCS and/or WMI or submit MCA applications to BCS (who in turn submits to WMI) for free.  BCS pays Synergy a commission for each, and every application Synergy submits to BCS and WMI, and WMI approves and funds.

93.    BCS pays Synergy pursuant to a written agreement between BCS and Synergy.

94.    The written agreement between Synergy and WMI requires Synergy to perform a "bank verification" in coordination with, and with the direct participation of BCS and WMI.

95.   BCS and/or WMI pays Synergy from bank accounts WMI and/or BCS own and control.

96.   BCS and WMI know the exact identity of Synergy and the exact location of Synergy and does not reveal the true identity of Synergy.

97.   Through information and belief, Synergy is a related company to WMI, and there is a potentially a "subsidiary" relationship as indicated by the Synergy representative in Paragraph 71 above.

98.   There is a direct link between the phone calls received by Plaintiff from Synergy and the approved funding contract Plaintiff received from WMI via email on at least five different occasions.

99.   WMI directly participates in the calling campaign and coordinates with BCS and their Independent Sales Organizations.

100.   On April 8, 2022, Plaintiff filed his Original Complaint in Case No. 3:22-cv-00123-FM against WMI alleging TCPA violating phone calls from Synergy on behalf of WMI.

101.   WMI was served with the Complaint in the Texas Action on April 28, 2022, and was on notice from that point forward that Plaintiff did not want solicitation phone calls from Synergy or Wide Merchant.

102.   On June 23, 2022, Plaintiff began to receive additional phone calls from Synergy, on behalf of BCS and WMI.

103.   On June 23, 2022, at 9:00 AM Mountain time Plaintiff received another phone call from Synergy.

104.   Plaintiff asked the Synergy representative if the loan solicitation was being made on behalf of Wide Merchant and whether the loan would be with Wide Merchant.  The representative confirmed he was calling on behalf of Wide Merchant to solicit a merchant cash advance through Wide Merchant.

105.   On June 23, 2022, at 9:53 AM Plaintiff sent an email to Aaron Cruz asking if the "loan would be through Wide Merchant."

106.    On June 23, 2022, at 9:56 AM, Aaron Cruz responded to Plaintiff's email with an email saying "Yes" the loan would be through Wide Merchant.  Exhibit G.

107.    Plaintiff received additional phone calls from Synergy on July 13, 2022, and July 19, 2022, soliciting Plaintiff for loans through WMI.

108.    On August 11, 2022, Plaintiff received a phone call from Dan Brown ("Brown") soliciting Plaintiff.  Brown followed up this phone call with an email to Plaintiff.  Exhibit L.

109.    On August 19, 2022, Plaintiff received an email from Aaron Cruz asking Plaintiff to send bank statements for loan processing.  Yet, again continuing the solicitation of Plaintiff that WMI refused to put an end to.  Exhibit I.

110.    On August 21, 2022, Plaintiff emailed Wide Merchant's attorney a draft of a Proposed Second Amended Complaint.  This proposed Second Amended Complaint detailed additional phone calls Plaintiff was continuing to receive from Synergy on behalf of WMI.

111.    On August 23, 2022, Plaintiff received an email from Aaron Cruz, the Synergy agent and/or employee who solicits on behalf of BCS and Wide Merchant, soliciting Plaintiff for a loan through Wide Merchant.  Exhibit J.

112.    On August 31, 2022, Aaron Cruz called Plaintiff yet again soliciting Plaintiff for a loan through Wide Merchant.  Exhibit K.

113.    WMI was on full notice Plaintiff did not want phone calls from Synergy and actively turned a blind eye and allowed the phone calls to continue.

114.    WMI has been willfully negligent in its response to the phone calls Plaintiff has received from Synergy on behalf of WMI.  WMI has the contact information of both Synergy and Aaron Cruz and has taken no steps to stop the calls from coming to Plaintiff.

115.    WMI knows Plaintiff does not want these phone calls and has taken no steps to stop Synergy from soliciting on behalf of WMI.

116.    Synergy operates as a clandestine entity that does not have any trackable data on its website.  The Synergy phone number, address, website registration, and other information that could be used to identify a company is not registered to any publicly available source.

117.   A search of all 50 secretaries of state websites did not find any "Synergy Financial LLC" registered to do business in any state, the District of Columbia, or any United States Territory with an address, phone number, or website that matches the information found at https://www.synergyfinancellc.com.  Exhibit H.

118.   Synergy operates as an unaccountable invisible operation with operations believed to be located offshore outside the reach of the laws and protections of the United States Government.

119.   Defendant Wide Merchant is aware of Synergy's unlawful robocalling and their "do not call" violations and continues to accept applications from Synergy.

120.    Defendants BCS and Wide Merchant are aware of and have sanctioned Synergy's actions.

121.   Synergy acted as an authorized agent of Defendants BCS and Wide Merchant.

122.   There is essentially no difference between Synergy, BCS, and Wide Merchant.

123.   Defendant Kim controls and dominates Defendants BCS and Wide Merchant.

124.   Defendant Kim is aware of the TCPA violations and personally participates in the calling campaign, and authorizes, the violations by ratifying the contract with the telemarketers, paying compensation to the telemarketers and refusing to take actions to stop the unlawful behavior because it benefits Defendant Kim financially.

125.   Defendant Kim personally reviews and approves the contracts WMI offers as part of the Synergy telephone solicitation campaign.

126.   Synergy on multiple occasions used a spoofed local area code in order to trick Plaintiff to thinking the calls were local and availed themselves of the resident forum.

127.   Plaintiff received the following calls from Synergy (Table A).

| Number: | Date | Time | Caller ID | Notes |
|---|---|---|---|---|
| 1 | 10/26/2021 | 1:23 PM | 917-765-3437 | Call from Dan Brown |
| 2 | 10/27/2021 | 12:39 PM | 917-765-3437 | Call from Dan Brown |
| 3 | 01/06/2022 | 12:37 PM | 917-765-3437 | Call from Dan Brown |
| 4 | 02/03/2022 | 2:35 PM | 917-765-3437 | Call from Dan Brown |
| 5 | 02/03/2022 | 3:06 PM | 917-765-3437 | Call from Dan Brown |
| 6 | 02/03/2022 | 4:23 PM | 917-765-3437 | Call from Dan Brown |

| 7 | 02/04/2022 | 12:05 PM | 917-765-3437 | Call from Dan Brown |
| 8 | 02/18/2022 | 9:53 AM | 915-921-1529 | Missed Call |
| 9 | 02/18/2022 | 9:53 AM | 915-921-1529 | Telemarketer for Synergy |
| 10 | 02/18/2022 | 2:55 PM | 917-764-6878 | Direct call from Synergy |
| 11 | 02/22/2022 | 8:26 AM | 917-764-7079 | Direct call from Synergy |
| 12 | 02/22/2022 | 9:36 AM | 917-764-7079 | Direct call from Synergy |
| 13 | 02/22/2022 | 9:36 AM | 917-764-7079 | Direct call from Synergy |
| 14 | 02/22/2022 | 10:22 AM | 917-764-7079 | Direct call from Synergy |
| 15 | 02/22/2022 | 12:48 PM | 917-764-7079 | Direct call from Synergy |
| 16 | 02/22/2022 | 1:01 PM | 917-764-7079 | Direct call from Synergy |
| 17 | 02/22/2022 | 3:04 PM | 21093 | Automated Short Text |
| 18 | 02/22/2022 | 3:05 PM | 21093 | Automated Short Text |
| 19 | 02/24/2022 | 3:05 PM | 21093 | Automated Short Text |
| 20 | 03/03/2022 | 3:01 PM | 21093 | Automated Short Text |
| 21 | 03/07/2022 | 11:17 AM | 21093 | Automated Short Text |
| 22 | 03/07/2022 | 1:15 PM | 21093 | Automated Short Text |
| 23 | 03/16/2022 | 9:02 AM | 21093 | Automated Short Text |
| 24 | 03/16/2022 | 9:02 AM | 21093 | Automated Short Text |
| 25 | 03/17/2022 | 3:38 PM | 917-387-4655 | Call from Aaron Cruz |
| 26 | 03/18/2022 | 10:39 AM | 972-528-5166 | Call from Synergy Agent |
| 27 | 03/18/2022 | 2:28 PM | 917-387-4655 | Call from Aaron Cruz |
| 28 | 03/18/2022 | 2:41 PM | 21093 | Automated Short Text |
| 29 | 03/18/2022 | 3:34 PM | 917-387-4655 | Call from Aaron Cruz |
| 30 | 03/21/2022 | 2:58 PM | 917-387-4655 | Text Message from Aaron Cruz |
| 31 | 03/21/2022 | 2:58 PM | 917-387-4655 | Text Message from Aaron Cruz |
| 32 | 03/21/2022 | 3:00 PM | 917-387-4655 | Text Message from Aaron Cruz |
| 33 | 03/21/2022 | 3:01 PM | 917-387-4655 | Text Message from Aaron Cruz |
| 34 | 03/21/2022 | 3:01 PM | 917-387-4655 | Text Message from Aaron Cruz |
| 35 | 03/21/2022 | 3:02 PM | 917-387-4655 | Call from Aaron Cruz |
| 36 | 03/21/2022 | 3:02 PM | 917-387-4655 | Call from Aaron Cruz |
| 37 | 03/21/2022 | 3:03 PM | 917-387-4655 | Call from Aaron Cruz |
| 38 | 03/21/2022 | 3:03 PM | 917-387-4655 | Call from Aaron Cruz |
| 39 | 03/21/2022 | 3:04 PM | 917-387-4655 | Call from Aaron Cruz |
| 40 | 03/21/2022 | 3:04 PM | 917-387-4655 | Text Message from Aaron Cruz |
| 41 | 03/21/2022 | 3:05 PM | 917-387-4655 | Call from Aaron Cruz |
| 42 | 03/21/2022 | 3:05 PM | 917-387-4655 | Call from Aaron Cruz |
| 43 | 03/21/2022 | 3:28 PM | 917-387-4655 | Call from Aaron Cruz |
| 44 | 03/28/2022 | 10:08 AM | 917-261-3813 | Sent Email after phone call |
| 45 | 03/30/2022 | 12:41 PM | 917-387-4655 | Call from Aaron Cruz |
| 46 | 03/30/2022 | 3:30 PM | 917-261-3813 | Sent Email after phone call |
| 47 | 03/31/2022 | 12:06 PM | 915-285-2010 | Received call from Telemarketer transferred to Michael Gruber |

| 48 | 04/01/2022 | 8:43 AM | 915-302-7171 | Received call from Telemarketer transferred to Michael Gruber |
|---|---|---|---|---|
| 49 | 04/04/2022 | 11:15 AM | 915-302-7171 | Missed Call |
| 50 | 04/05/2022 | 11:35 AM | 915-302-7171 | Received call from Telemarketer transferred to Michael Gruber |
| 51 | 04/05/2022 | 2:00 PM | 917-261-3813 | Missed Call |
| 52 | 04/07/2022 | 2:46 PM | 917-387-4655 | Missed Call |
| 53 | 06/23/2022 | 9:00 AM | 917-764-7740 | Aaron Cruz – Sent email |
| 54 | 06/23/2022 | 9:02 AM | 917-764-7740 | Aaron Cruz sent email confirm |
| 55 | 06/23/2022 | 10:47 AM | 917-387-4655 | Text from Aaron Cruz |
| 56 | 06/23/2022 | 10:47 AM | 917-387-4655 | Text from Aaron Cruz |
| 57 | 06/23/2022 | 11:00 AM | 972-528-5166 | Spoofed call from Aaron Cruz |
| 58 | 06/23/2022 | 2:31 PM | 972-528-5166 | Missed Call |
| 59 | 06/23/2022 | 2:32 PM | 917-624-9818 | Spoke to Aaron Cruz |
| 60 | 07/13/2022 | 2:14 PM | 917-810-5279 | Call from |
| 61 | 07/13/2022 | 3:06 PM | 917-387-4655 | Call from Aaron Cruz |
| 62 | 07/19/2022 | 11:15 AM | 917-590-3169 | Sent email from Dan Brown |
| 63 | 07/19/2022 | 11:32 AM | 917-590-3169 | Spoke to Dan Brown |
| 64 | 08/11/2022 | 4:41 PM | 915-774-6942 | Spoke to Dan Brown.  Sent email. |
| 65 | 08/30/2022 | 4:24 PM | 917-387-4655 | Call from Aaron Cruz |

128.    Defendants employ outrageous, aggressive, and illegal sales techniques that violate multiple federal laws and state consumer statutes.

129.    None of the Defendants registered pursuant to § 302.101 of the Texas Business & Commerce Code to provide telephone solicitations.

130.    Additionally, Defendants did not verify whether or not Synergy was registered pursuant to § 302.101 of the Texas Business & Commerce Code to provide telephone solicitations, which Synergy is (and was) not.

131.    The website https://direct.sos.state.tx.us/telephone/telephonesearch.asp site ("Texas Registration Database") does not contain any of the Defendants' registrations.

132.    None of the Defendants qualify for an exemption under § 302.101.

133.    No emergency necessitated any of the alleged illegal robocalls.

134.    The Defendants never sent Plaintiff any do-not-call policy.  Plaintiff sent an internal do-not-call policy request to info@synergyfinancellc.com and info@widemerchantgroup.com.

135.    On information and belief, the Defendants did not have a written do-not-call policy while they were sending Plaintiff the unsolicited calls.

136.    On information and belief, the Defendants did not train its agents who engaged in telemarketing on the existence and use of any do-not-call list.

137.    Defendants participated in, facilitated, directed, authorized, knew of or willfully ignored the false and misleading sales practices and unlawful robocalling, while knowing facts that required a reasonable person to investigate further, and approved, and ratified the conduct of their employees, agents, and co-conspirators to engage in the false and misleading sales practices and unlawful robocalling.

138.    Plaintiff has limited data storage capacity on his cellular telephone. Incoming telemarketing calls consumed part of this capacity.

**VICARIOUS LIABILITY OF BCS AND WIDE MERCHANT**

139.    Defendant BCS and Wide Merchant are vicariously liable under the theories of implied authority, apparent authority, and ratification, and as well as liable because any other result would impair the underlying purpose of the TCPA.

140.    "A[n] entity may be held vicariously liable for violations of the TCPA 'under a broad range of agency principles, including not only formal agency, but also principles of apparent authority and ratification.'" *Aranda v. Caribbean Cruise Line, Inc.,* 179 F. Supp. 3d 817, 831 (N.D. Ill. 2016) (Quoting *In re Joint Petition filed by Dish Network, LLC*, 28 F.C.C. R. 6574, 6582 ¶ 28 (2013)).  "Formal Agency" in this context means actual authority, which may be express or implied. Id.

141.    Defendants BCS, Wide Merchant and Kim gave express authority and apparent authority to Synergy Financial with full knowledge the administration of sales and solicitation of sales would be conducted via TCPA violating phone calls.

142.    Defendants BCS, Wide Merchant and Kim have ratified the conduct and behavior of Synergy Financial by repeatedly signing contracts to hire them to administer sales and the solicitation of sales of their business funding services with the full knowledge and expectation Defendants would violate the TCPA.

143.    Defendants BCS and Wide Merchant did not terminate their relationship with Synergy until September 28, 2022, and continued to solicit Plaintiff through phone calls from Synergy even after Wide Merchant was served with Plaintiff's Complaint on April 1, 2022 in the Texas Action.

144.    BCS and WMI continued to knowingly accept applications directly from Synergy despite being on alert for multiple months Synergy was violating the TCPA, between April and September, 2022 (just under six months).

145.    BCS and Wide Merchant directly participate in the phone calls made by Synergy by sending the contracts to borrowers directly from WMI and then completing the DecisionLogic funding process with both Synergy and the borrower who was called by Synergy.

146.    BCS and Wide Merchant had actual knowledge of Synergy's TCPA violating practices and procedures and turned a blind eye to those violations.

147.    BCS and Wide Merchant knew Synergy was calling Plaintiff on their behalf and that Plaintiff did not want those phone calls.  BCS and WMI were on full notice Plaintiff did not want phone calls soliciting their MCA loans and they did nothing to stop Synergy from calling Plaintiff.

148.    Synergy was still calling Plaintiff and soliciting Plaintiff for loans through WMI because BCS and WMI were continuing to accept applications from Synergy with the full knowledge Synergy was violating the TCPA.

149.    BCS and Wide Merchant failed to take even the most minimal action by having Synergy remove Plaintiff from their solicitation database.  BCS and WMI had contact information for Synergy, though they have actively kept that information from Plaintiff, and refused to instruct Synergy to stop violating the TCPA and to cease contact with Plaintiff.

150.    Failure to hold BCS, Wide Merchant and Kim responsible for the calls made on their behalf will be a signal to other TCPA violators they can escape TCPA liability by hiring offshore and/or invisible entities to make phone calls on their behalf.

151.    Not only does the seller have the responsibility to ensure TCPA compliance for calls made on their behalf, but they also have the responsibility to ensure those companies operate in the sunlight and are not taking active measures to avoid detection.

152.    There is evidence Wide Merchant was provided evidence of the TCPA-violating phone calls being made by Synergy to Plaintiff, and BCS and Wide Merchant communicated their consent to Synergy to continue making these calls through acquiescence when BCS and Wide Merchant continued to accept applications from Synergy.

153.    A reasonable jury could find BCS and Wide Merchant ratified Synergy's behavior by remaining silent and continuing to accept the benefits of Synergy's tortious conduct despite knowing what Synergy was doing, or at the very least, knowing of facts that would have led a reasonable person to investigate further.

154.    Until September 28, 2022 when they allegedly terminated their relationship with Synergy, Defendants BCS and Wide Merchant continued to ratify the behavior of Synergy by failing to repudiate the actions of Synergy.  Synergy called Plaintiff as recently as August 30, 2022, more than three months after Wide Merchant was alerted of the unwanted phone calls.

155.    BCS and Wide Merchant have been willfully negligent in their response to the unwanted phone calls made to Plaintiff and continued to allow Synergy to solicit on behalf of BCS and Wide Merchant and to submit applications to BCS and Wide Merchant until September 28, 2022.

156.    BCS and Wide Merchant are fully aware of the actions of Synergy and have shut their eyes to Synergy's behavior and directed calls towards Plaintiff.

157.    BCS and Wide Merchant made an outward manifestation of apparent authority to Synergy when BCS and Wide Merchant continued to accept credit applications from Synergy despite knowing full well Synergy was making TCPA-violating phone calls.

158.    At all times relevant hereto, BCS and Wide Merchant did not ask (or require) Synergy to scrub its calling lists against the National Do-Not-Call Registry.

159.    At all times relevant hereto, BCS and Wide Merchant did not ask Synergy to stop calling Plaintiff.

160.    BCS and Wide Merchant did not take any reasonable steps to bring Synergy into TCPA compliance, until they allegedly abruptly terminated their relationship with Synergy on September 28, 2022.

## DEFENDANT KIM IS PERSONALLY LIABLE

161.    Defendant Kim refuses to take any action to stop or curtail the unlawful sales practices and robocalling because these practices benefit Defendant Kim financially.

"If the officer directly participated in or authorized the statutory violation, even though acting on behalf of the corporation, he may be personally liable.  See *United States v Pollution Serv. Of Oswego, Inc*., 763 F.2d 133, 134-135 (2nd Cir.1985)

The "well-settled" tort rule provides that "when corporate officers directly participate in or authorized the commission of a wrongful act, even if the act is done on behalf of the corporation, they may be personally liable." *General Motos Acceptance Corp. v. Bates*, 954 F.2d 1081, 1085 (5th Cir. 1992).  The Fifth Circuit has elaborated that "the thrust of the general [tort] rule is that the officer to be held personally liable must have some direct, personal participation in the tort, as where the defendant was the 'guiding spirit' behind the wrongful conduct….or the 'central figure' in the challenged corporate activity."  *Mozingo v. Correct Mfg. Corp*., 752 F.2d 168, 174 (5th Cirt. 1985) (Citing *Escude Cruz v. Ortho Pharmaceutical Corp*., 619 F. 2d 902, 907 (1st Cir.1980)) (Citing *Texas v. American Blastfax, Inc*., 164 F. Supp. 2d 892 (W.D. Tex. 2001)

 Quoting Texas v. American Blastfax:
The Court finds the above principles applicable to the TCPA that is, an officer may be personally liable under the TCPA if he had direct, personal participation in or personally authorized the conduct found to have violated the statute, and was not merely tangentially involved.  Individuals who directly (and here, knowingly and willfully) violate the TCPA should not escape liability solely because they are corporate officers.  As the State persuasive argues, to hold otherwise would allow the individual defendants to simply dissolve Blastfax, set-up a new shell corporation, and repeat their conduct.  Congress surely did not intend to permit such a result in passing the TCPA.

To be clear, the Court finds Greg and Michael Horne were the "guiding spirits" and the "central figures" behind the TCPA violations.  They were the two persons who controlled all of Blastfax's day-to-day operations. They both had direct, personal involvement in and ultimate control over every aspect of Blastfax's wrongful conduct that violate the TCPA, and/or directly controlled and authorized this conduct.  And they did so with their eyes and pocketbooks wide open.  After October 5, 2000, Greg and Michael Horne had good reason to believe they were running a business that violated the TCPA.  On February 9, 2001, they knew they were.  Yet they continued to direct their company to send unsolicited intrastate fax

advertisements.  This is far more than a simple derivative liability case.  Accordingly, the Court holds defendants Greg and Michael Horne are jointly and severally liable with Defendant Blastfax, Inc., for all TCPA damages in this lawsuit."  Texas v. American Blastfax, Inc., 164 F. Supp. 2d 892 (W.D. Tex. 2001)

162.    The same Court held that corporate officers were also personally liable for DTPA violations.

The State contends Greg and Michael Horne are personally liable for any DTPA damages because they were solely responsible for the violating conduct…..For the same reasons discussed in finding the individual defendants personally liable under the TCPA, the Court agrees.  See, e.g., Barclay v. Johnson, 686 S.W.2d 334, 336-37 (Tex. Civ. App.-Houston [1ST Dist.] 1985, no writ) (finding personal liability for corporate officer in DTPA misrepresentation claim, based on general rule that "a corporate agent knowingly participating in a tortious of fraudulent act may be held individually liable, even though he performed the act as an agent for the corporation……Accordingly, the Court finds defendants American Blastfax, Inc., Greg Horne and Michael Horne are jointly and severally liable for $6,000 in damages for their violations of the DTPA." Texas v. American Blastfax, Inc., 164 F. Supp. 2d 892 (W.D. Tex. 2001).

163.    At all times material to the Complaint, acting alone or in concert with others, Defendant Kim has formulated, directed, controlled, had the authority to control, or participated in the acts and practices of Defendants BCS and Wide Merchant including the acts or practices set forth in this Complaint.

164.    Defendant Kim, the principal director and operator of Defendants BCS and Wide Merchant, controls the day-to-day operations of BCS and Wide Merchant and directed their employees, agents, salespersons, and solicitors to make TCPA violating phone calls and solicit their business funding services.

165.    Defendant Kim approved the telemarketing scripts, signed the contracts, paid commissions for the illegal behavior, and directed the illegal calls to be made for his financial benefit.

166.    Defendant Kim is not merely a bystander.  He is the mastermind that schemed, planned, directed, initiated, and controlled illegal and fraudulent behavior on behalf of BCS and WMI.

167.    Defendant Kim directly participates in the calling campaign by being involved in the approval process.

168.    The DocuSign contracts sent to Plaintiff by Defendant WMI show the direct participation of Defendant Kim.    Exhibit I.

169.    Defendant Kim is directly involved in the process and views and approves of the contracts submitted to BCS and WMI by Defendant Synergy.

170.    Defendant Kim reviewed and approved the contract sent by WMI to Plaintiff as a direct result of the phone calls made to Plaintiff on BCS and WMI's behalf by Synergy.

171.    Defendant Kim is well aware his conduct violated the TCPA and Texas DPTA and refused to alter their behavior.  **Defendant Kim is** the sole director of BCS and Wide Merchant and the only person with the power to make the unlawful, fraudulent, and unethical behavior stop.  Yet, Kim has taken no steps to stop the behavior because the behavior benefits Kim financially.  **Defendant Kim** breaks the law with his eyes and pocketbooks wide open.

172.    Defendants BCS, Wide Merchant and Kim should be held jointly and severally liable for both the TCPA violations and Tex. Bus. Com. Code 302.101 via Texas DTPA because they actually committed the conduct that violated the TCPA and Texas DTPA, and/or they actively oversaw and directed this conduct.

173.    Defendant Kim should be held liable because to do otherwise would simply allow him to dissolve Wide Merchant and set up a new corporation and repeat their conduct.  This would result in both the TCPA and DTPA being unenforceable.

174.    In fact, Defendant Kim did dissolve Wide Merchant via a Certificate of Dissolution – California Corporation Termination filed on November 13, 2023 with the California Secretary of State, File No. BA20231734963.

175.    Wide Merchant's dissolution filing states that the known debts and liabilities have been actually paid or paid as far as its assets permitted, as of November 13, 2023. However, at the time of the dissolution, Plaintiff's claims against Wide Merchant had not been resolved

and Wide Merchant was on notice that Plaintiff intended to pursue all claims against Wide Merchant to the fullest extent permitted by law.

176.    Allowing Defendant Kim to escape liability would result in a manifest injustice, as it would prevent Plaintiff from ever recovering any money on his claims in this action.

### THE SELLERS SHOULD BE HELD LIABLE TO UPHOLD THE DETERRENT EFFECT AND PURPOSE OF THE TCPA

177.    As the court ruled in *Jackson v. Caribbean Cruise Line, Inc.*, the defendant sellers should be held liable for their violations of the TCPA. Courts have looked at the purpose of the TCPA and found that not holding the sellers liable through vicarious liability would undermine the purpose of the TCPA

178.    Every entity in the application for "business funding" should be deemed a beneficiary of the calls and held liable for damages under the TCPA under vicarious liability. Sellers are in the best position to monitor and police third-party telemarketers' compliance with the TCPA and to hold otherwise would leave consumers without an effective remedy for telemarketing intrusions.

### SUCCESSOR LIABILITY OF DEFENDANT WIDE MERCHANT INVESTMENT HOLDINGS, INC.

179.    Defendant Wide Merchant Investment Holdings, Inc. is the successor-in-interest to Defendant Wide Merchant Investment, Inc.

180.    Wide Merchant Investment, Inc.'s ownership dissolved the corporation on November 13, 2023 and then formed a new corporation with a very similar name, Wide Merchant Investment Holdings, Inc.

181.    Wide Merchant Investment Holdings, Inc. does the same business as its predecessor corporation, Wide Merchant Investment, Inc., is located at the same address, has the same owner, officer, and stockholder(s), and the same website.

182.    Upon information and belief, Defendant Wide Merchant Investment Holdings, Inc. acquired all of the assets of Defendant Wide Merchant Investment, Inc. (now dissolved).

183.    Under the successor liability doctrine, a corporation's contacts with a forum may be imputed to its successor if forum law would hold the successor liable for the actions of its predecessor. Parallel Media, LLC v. D&M Cap. Grp., LLC, 2011 WL 13217278 at *14 (C.D. Cal. May 31, 2011); *see also* Iwatani Corp. of Am. V. Asa, 2024 U.S. Dist. LEXIS 209665 (C.D. Cal. Oct. 18, 2024).

184.    "[A] successor company has liability for a predecessor's actions if: (1) the successor expressly or impliedly agrees to assume the subject liabilities..., (2) the transaction amounts to a consolidation or merger of the successor and the predecessor, (3) the successor is a mere continuation of the predecessor, or (4) the transfer of assets to the successor is for the fraudulent purpose of escaping liability for the predecessor's debts." CenterPoint Energy, Inc. v. Superior Court, 157 Cal.App.4th 1101, 1120, 69 Cal. Rptr. 3d 202 (2007); *see also* Ray v. Alad Corp. (1977) 19 Cal. 3d 22, 31 [136 Cal. Rptr. 574, 560 P.2d 3].

185.    Defendant Wide Merchant Investment, Inc. was dissolved as a corporate entity on November 13, 2023, and this was done with the specific intent and purpose of fraudulently evading TCPA liability as a result of Plaintiff's claims, originally filed in Texas and now being pursued by the Plaintiff in the Central District of California in this action.

186.    However, Wide Merchant Investment, Inc. did not cease doing business when it was dissolved on November 13, 2023.

187.    Wide Merchant's website, www.widemerchantgroup.com, was created on May 14, 2012. A true and correct screenshot from lookup.icann.org shows the relevant domain information.

**Domain Information**

Name: WIDEMERCHANTGROUP.COM

Registry Domain ID: 1720403058_DOMAIN_COM-VRSN

Domain Status:
clientTransferProhibited

Nameservers:
NS1.DREAMHOST.COM
NS2.DREAMHOST.COM
NS3.DREAMHOST.COM

**Dates**

Registry Expiration: 2025-05-14 22:03:34 UTC

Updated: 2018-08-17 22:53:14 UTC

Created: 2012-05-14 22:03:34 UTC

188.    According to the Wayback Machine, www.web.archive.org, Wide Merchant's website, www.widemerchantgroup.com, has been active during 2024 and 2025, and remains active today.

189.    Wide Merchant's website has not substantially changed between 2023, 2024, and 2025.

190.    The website indicates that the company's name is "Wide Merchant Group" with an address of 3580 Wilshire Blvd #160, Los Angeles, CA 90010, and their phone number is 800-630-4214.

191.    At all times material hereto, the address, 3580 Wilshire Blvd #160, Los Angeles, CA 90010, matches the address listed for Wide Merchant Investment, Inc. on the California Secretary of State's records as the principal address, mailing address, and address of the agent for service of process, David Kim.

192.    Notably, the address 3580 Wilshire Blvd #160, Los Angeles, CA 90010, matches the address listed for Wide Merchant Investment Holdings, Inc. on the Nevada Secretary of State's records as the address of the President and Director, David Kim, 3580 Wilshire Blvd. Suite 160, Los Angeles, CA 90010 (last updated: 12/20/2024).

193.    Therefore, Wide Merchant Investment, Inc. (now dissolved) and Wide Merchant Investment Holdings, Inc. (recently formed and an active entity) have the same address associated with both entities.

194.    Upon information and belief, the website www.widemerchantgroup.com is now being utilized by Wide Merchant Investment Holdings, Inc. for marketing and promotional purposes.

195.    Upon information and belief, if one were to "Apply Now" for a business loan and/or merchant cash advance on Wide Merchant's website www.widemerchantgroup.com, Wide Merchant Investment Holdings, Inc. would directly financially benefit and generate revenue from any funding deal generated from this application.

196.    At all times material hereto, the two Wide Merchant entities had and have the same owners, officers, and directors, including David Kim.

197.    Wide Merchant Investment Holdings, Inc. was incorporated in Nevada on December 19, 2024, *after* the Texas Action was dismissed for lack of personal jurisdiction and *after* Plaintiff initiated the instant action on November 21, 2024.

198.    To constitute a valid reorganization that results in two separate entities, a corporate transaction must meet certain standards: "An asset acquisition can amount to a de facto merger. This may occur where the purchaser acquires *all* assets, including *choses in action*, and also assumes *all liabilities* of the seller; the purchaser continues to operate the business and the seller dissolves." (Friedman, Cal. Practice Guide: Corporations (The Rutter Group 2007) ¶ 8:668, p. 8-88.7.)

199.    "The crucial factor in determining whether a corporate acquisition constitutes either a *de facto* merger or a mere continuation is the same: whether adequate cash consideration was paid for the predecessor corporation's assets." Franklin v. USX Corp. (2001) 87 Cal. App. 4th 615, 625 [105 Cal. Rptr. 2d 11].

200.    Wide Merchant Investment Holdings, Inc. is a mere continuation of Wide Merchant Investment, Inc.

201.    A *de facto* merger took place between Wide Merchant Investment, Inc. and Wide Merchant Investment Holdings, Inc. sometime between November 13, 2023 and December 19, 2024. *See* Marks v. Minnesota Mining & Manufacturing Co. (1986) 187 Cal. App. 3d

1429, 1435-1437 [232 Cal. Rptr. 594](discussing successor liability factors under California law).

202.    The determination whether to impose successor liability involves broad equitable considerations and thus is for the court to decide. See <u>Rosales v. Themex-Thermatron, Inc.</u> (1998) 67 Cal. App. 4th. 187, 196 [78 Cal. Rptr. 2d 861]; see also Friedman, Cal. Practice Guide: Corporations, *supra* ¶8:663, pp. 8-88.5 to 8-88.6.).

203.    No consideration was given for the predecessor corporation, Wide Merchant Investment, Inc.'s assets and made available for meeting the claims of its unsecured creditors and claimants, such as the Plaintiff.

204.    Additionally, David Kim was an officer, director, and/or stockholder of both corporations, Wide Merchant Investment, Inc. and Wide Merchant Investment Holdings, Inc.

205.    Alternatively, no adequate consideration was given for the predecessor corporation, Wide Merchant Investment, Inc.'s assets by Wide Merchant Investment Holdings, Inc.

206.    The transfer of assets from the predecessor corporation, Wide Merchant Investment, Inc., to the successor-in-interest corporation, Wide Merchant Investment Holdings, Inc., was done for the fraudulent purpose of escaping liability for Wide Merchant Investment, Inc.'s TCPA violations which were caused by illegally calling the Plaintiff.

207.    The two Wide Merchant corporations have not preserved their separate identities. They are the same business enterprise doing the exact same thing.

208.    Both corporations sell and/or sold business loans, merchant cash advances, and other financing opportunities to small businesses.

209.    Both corporations referred business loan leads to Blue Coast Service, Inc.

210.    Both corporations utilize and/or utilized the same lead generation vendors to get new customers.

211.    Both corporations have utilized and/or utilize the same marketing material, telemarketing sales scripts, and marketing programs.

212.    Both corporations did not honor the National Do-Not-Call Registry when making telemarketing calls.

## INJURY, HARM, DAMAGES, AND ACTUAL DAMAGES AS A RESULT OF THE CALLS

213.    Defendants' calls harmed Plaintiff by causing the very harm that Congress sought to prevent—a "nuisance and invasion of privacy."

214.    Defendants' calls harmed Plaintiff by trespassing upon and interfering with Plaintiff's rights and interests in Plaintiff's cellular telephone.

215.    Defendants' calls harmed Plaintiff by trespassing upon and interfering with Plaintiff's rights and interests in Plaintiff's cellular telephone line.

216.    Defendants' calls harmed Plaintiff by intruding upon Plaintiff's seclusion.

217.    Plaintiff has been harmed, injured, and damaged by the calls including but not limited to: reduced device storage, reduced data plan usage, invasion of privacy, reduced enjoyment and usage of his cell phone, reduced battery usage, anger, and frustration.

### Plaintiff's Cell Phone is a Residential Number

218.    The calls were to Plaintiff's cellular phone 915-383-XXXX, which is Plaintiff's personal cell phone that he uses for personal, family, and household use. Plaintiff maintains no landline phones at his residence and has not done so for at least 10 years and primarily relies on cellular phones to communicate with friends and family. Plaintiff also uses his cell phone for navigation purposes, sending and receiving emails, timing food when cooking, and sending and receiving text messages. Plaintiff further has his cell phone registered in his personal name, pays the cell phone from his personal accounts, and the phone is not primarily used for any business purpose.

### Violations of the Texas Business and Commerce Code 305.053

219.    The actions of the Defendants violated the Texas Business and Commerce Code 305.053 by placing automated calls to a cell phone which violates 47 U.S.C. §227(b). The calls by the defendants violated Texas law by placing calls with a pre-recorded message to a cell

phone which violate 47 U.S.C. § 227(c)(5) and 47 U.S.C. § 227(d) and 47 U.S.C. § 227(d)(3) and 47 USC 227(e).

220.    The calls by the Defendants violated Texas law by spoofing the caller ID's per 47 § U.S.C. § 227(e) which in turn violates the Texas statute.

**Violations of the Texas Business and Commerce Code § 302.101**

221.    The actions of the Defendants violated the Texas Business and Commerce Code 302.101 by placing solicitation phone calls to a Texas resident without having registration certificate and bond on file with the Texas Secretary of State.

222.    Texas Business and Commerce Code § 302.101 provides a private right of action. A violation of Chapter 302 "is a false, misleading, or deceptive act or practice under Subchapter E, Chapter 17" and is enforceable as such: "A public or private right or remedy prescribed by Subchapter E, Chapter 17, may be used to enforce [Chapter 302." Tex. Bus. & Com. Code § 302.303.

223.    The use or employment by any person of a false, misleading, or deceptive act or practice" causes "economic damages or damages for mental anguish." Tex. Bus. & Com. Code § 17.50.

224.    Texas Business and Commerce Code §302.101 states that a person (1) "may not make a telephone solicitation" (a) "from a location in [Texas]" or (b) "to a purchaser located in [Texas]," (2) "unless the [person] holds a registration certificate for the business location from which the telephone solicitation is made." Tex. Bus. & Com. Code § 302.101(a).

225.    Under Texas Business and Commerce Code § 302.302 Plaintiff is entitled to seek damages of up to $5000 per violation of §302.101.

226.    An unscrupulous seller cannot avoid the registration requirements of §302.101 by contracting with a third-party to make all the sales calls it wants, thus rendering the statute meaningless as long as the entity hires a third-party to make the calls. "Other courts…have determined that the federal common law principles of agency apply here ..., and the conduct of the telemarketer who makes the calls can be imputed to the seller if the telemarketer is an

agent of the seller." *Clewett v. Coverage One Ins. Group, LLC*, 2024 WL 1962895 at *2
(S.D. Tex. May 3, 2024)(holding that the seller is ultimately liable under §302.101 even if a
third-party telemarketer made calls on its behalf). See also *Guadian v. Progressive Debt
Relief, LLC*, No. EP-23-cv-235, 2023 WL 7393129, at *4 (W.D. Tex. Nov. 8, 2023); *Callier
v. Tip Top Cap. Inc.*, No. EP-23-cv-437, 2024 WL 1637535, at *3 (W.D. Tex. Apr. 16, 2024)
(holding that a seller violates § 302.101 when a telemarketer makes calls on behalf of a seller
who does not hold a registration certificate); *Forteza v. Pelican Inv. Holdings Grp., LLC*, No.
23-cv-401, 2023 WL 9199001, at *6 (E.D. Tex. Dec. 27, 2023) (same); *Salaiz v. Beyond
Fin., LLC*, No. EP-23-cv-6, 2023 WL 6053742, at *5 (W.D. Tex. Sept. 18, 2023) (refusing to
dismiss a § 302.101 claim because "Plaintiff has plausibly alleged that Defendant effected or
attempted to effect the thirteen calls Plaintiff received by hiring telemarketers to make those
calls.").

**FIRST CAUSE OF ACTION**
**Willful and/or Knowing Violation of 47 U.S.C. § 227**
**Telephone Consumer Protection Act of 1991**
**(Against all Defendants)**

227.    Plaintiff incorporates the foregoing allegations as if fully set forth herein.

228.    Defendants and/or their agents placed calls to Plaintiff's cellular telephone.

229.    Plaintiff never consented to receive calls from Defendants.  Plaintiff has no
relationship with Defendants.

230.    Defendants' calls were made for purposes of advertising and marketing
Defendants Wide Merchant and BCS' business funding services.  These calls constituted
commercial advertising and telemarketing as contemplated by the TCPA.

231.    The calls were made using an ATDS to the cellular phone of Plaintiff in violation
of 47 U.S.C. § 227(b)(1)(A)(iii) and (B).

232.    As a result of their unlawful conduct, Defendants repeatedly invaded the personal
privacy of Plaintiffs, causing Plaintiff to suffer damages and, under 47 U.S.C. §
227(b)(3)(B), entitling Plaintiff to recover $500 in statutory damages for each violation and
an injunction requiring Defendants to stop their unlawful calling campaigns.

233.    Not only did Defendants make these violating calls, Defendants and/or their agents did so "knowingly" and/or "willfully' under 47 U.S.C. § 227 (b)(3)(C).

234.    If the Court finds that Defendants willfully or knowingly violated this subsection, the Court may exercise its discretion to increase the amount of the award from $500 to $1500 per violation under 47 U.S.C. § 227(b)(3)(C).

**SECOND CAUSE OF ACTION**
**(Violation of the TCPA "Sales Call/DNC" Prohibition, 47 C.F.R. § 64.1200(C))**
**(Against All Defendants)**

235.    Plaintiff incorporates the forgoing allegations as if fully set forth herein.

236.    The foregoing acts and omissions of Defendants and/or their affiliates or agents constitute a violation of FCC regulations by making multiple telemarketing solicitations to a consumer on the National Do-Not-Call Registry within a 12-month period in violation of 47 C.F.R. § 64.1200(c)(2).

237.    Defendants called Plaintiff's private residential telephone number which was successfully registered on the National Do-Not-Call Registry more than thirty-one (31) days prior to the calls, in violation of 47 U.S.C § 227(c)(3)(F), and 47 C.F.R. § 64.1200(c)(2).

238.    Plaintiff was statutorily damaged at least sixty-five (65) times under 47 U.S.C. § 227(c)(3)(F) by the Defendants by the telephone calls described above, in the amount of $500 per call.

239.    Plaintiff is entitled to an award of at least $500 in damages for each such violation.  47 U.S.C. § 227(c)(5)(B).

240.    Plaintiff is entitled to an award up to $1,500 in damages for each knowing or willful violation of 47 U.S.C. § 227(c)(3)(F).

**THIRD CAUSE OF ACTION**
**Telemarketing Without Mandated Safeguards, 47 C.F.R. § 64.1200(d)**
**(Against All Defendants)**

241.    Plaintiff incorporates the forgoing allegations as if fully set forth herein.

242.    The foregoing acts and omissions of Defendants and/or their affiliates or agents constitute multiple violations of FCC regulations by making telemarketing solicitations despite lacking:

    a.  written policy, available upon demand, for maintaining a do-not-call list, in violation of 47 C.F.R. § 64.1200(d)(1)[3];

    b.  training for the individuals involved in the telemarketing on the existence of and use of a do-not-call list, in violation of 47 C.F.R. § 64.1200(d)(2)[4]; and,

    c.  in the solicitations, the name of the individual caller and the name of the person or entity on whose behalf the call is being made, in violation of 47 C.F.R. § 64.1200(d)(4).[5]

243.    Plaintiff is entitled to an award of at least $500 in damages for each such violation. 47 U.S.C. § 227(c)(5)(B).

244.    Plaintiff is entitled to an award of up to $1,500 in damages for each such knowing or willful violation. 47 U.S.C. § 227(c)(5).

## FOURTH CAUSE OF ACTION
### Violations of The Texas Business and Commerce Code 305.053
### (Against All Defendants)

245.    Plaintiff incorporates the foregoing allegations as if set forth herein.

246.    The foregoing acts and omissions of Defendants and/or their affiliates or agents constitute multiple violations of the **Texas Business and Commerce Code 305.053**, by making non-emergency telemarketing robocalls to Mr. Callier's cellular telephone number without his prior express written consent in violation of 47 U.S.C.§ 227 et seq. The Defendants violated 47 U.S.C. §227(d) and 47 U.S.C. § 227(d)(3) and 47 U.S.C. § 227(e) by using an ATDS that does not comply with the technical and procedural standards under this subsection.

---

[3] *See id.* at 425 (codifying a June 26, 2003 FCC order).
[4] *See id.* at 425 (codifying a June 26, 2003 FCC order).
[5] *See id.* at 425 (codifying a June 26, 2003 FCC order

247.    Plaintiff is entitled to an award of at least $500 in damages for each such violation. **Texas Business and Commerce Code 305.053(b).**

248.    Plaintiff is entitled to an award of up to $1,500 in damages for each such knowing or willful violation. **Texas Business and Commerce Code 305.053(c)**.

## FIFTH CAUSE OF ACTION

**(Violations of The Texas Business and Commerce Code 302.101)**
**(Against All Defendants)**

249.    Plaintiff incorporates the foregoing allegations as if set forth herein by reference each and every allegation set forth in the preceding paragraphs.

250.    The foregoing acts and omissions of Defendants and/or their affiliates or agents constitute multiple violations of the **Texas Business and Commerce Code 302.101**, by making non-registered solicitation calls to Plaintiff's cellular telephone number without his prior express written consent.

251.    Plaintiff is entitled to an award of up to $5,000 in damages for each such knowing or willful violation. **Texas Business and Commerce Code 302.302(a)**.

252.    Plaintiff is entitled to recover all reasonable costs of prosecuting the action, including court costs and investigation costs, deposition expenses, witness fees, and attorney's fees, in the event Plaintiff retains an attorney in this action. **Texas Business and Commerce Code 302.302(d)**

## SIXTH CAUSE OF ACTION

**(Successor Liability)**
**(Against Defendant Wide Merchant Investment Holdings, Inc.)**

253.    Plaintiff incorporates the foregoing allegations as if set forth herein by reference each and every allegation set forth in the preceding paragraphs.

254.    Plaintiff requests that the Court apply the doctrine of successor liability.

255.    Defendant Wide Merchant Investment Holdings, Inc. is liable for the wrongful actions of Wide Merchant Investment, Inc. alleged herein as its successor corporation.

256.    Defendant Wide Merchant Investment Holdings, Inc. expressly or impliedly agreed to assume the liabilities of Wide Merchant Investment, Inc., a dissolved corporation.

257.    By dissolving Wide Merchant Investment, Inc. and its owner then forming a new corporation, Wide Merchant Investment Holdings, Inc. that acquired all of the assets of its predecessor, the transactions amounted to a consolidation or merger of the two corporations.

258.    Wide Merchant Investment Holdings, Inc. is a mere continuation of its predecessor, Wide Merchant Investment, Inc.

259.    The transfer of assets to Wide Merchant Investment Holdings, Inc. and all of its business and customers was for the fraudulent purpose of escaping and evading liability for Plaintiff's TCPA and Texas state law claims originally filed against Wide Merchant Investment, Inc.

260.    Justice and equity demand that the Court impose successor liability upon Defendant Wide Merchant Investment Holdings, Inc. for the TCPA and Texas state law violations committed by Wide Merchant Investment, Inc.

## I.  PRAYER FOR RELIEF

WHEREFORE, Plaintiff Brandon Callier prays for judgment against the defendants jointly and severally as follows:

Leave to amend this Complaint to name additional DOESs as they are identified and to confirm to the evidence presented at trial;

A.  A declaration that actions complained of herein by Defendants violate the TCPA and Texas state law;

B.  An injunction enjoining Defendants and their affiliates and agents from engaging in the unlawful conduct set forth herein;

C.  An award of $3,000 per call in statutory damages arising from the TCPA intentional violations jointly and severally against the corporation and individual for 65 calls.

D.  An award of $1,500 in statutory damages arising from violations of the Texas Business and Commerce code 305.053

E.  An award of $5,000 in statutory damages for each violation arising from the Texas Business and Commerce code 302.101.

F.  An award to Mr. Callier of damages, as allowed by law under the TCPA;

1        G.  An award to Mr. Callier of pre-judgment interest, costs and attorneys' fees, as

2    allowed by law and equity

3        H.  Such further relief as the Court deems necessary, just, and proper.

4

5    Dated: March 16, 2025                  Respectfully Submitted,

6

7

8

9    _____

10   **Brandon Callier**
     **Plaintiff in Pro Se**

11   **Callier74@gmail.com**
     **1490 A George Dieter Drive, #174**
     **El Paso, TX 79936**

12   **(915) 383-4604**

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28


PLAINTIFF'S
EXHIBIT

**A**



**Brandon Callier <callier74@gmail.com>**

---

## Please DocuSign Contract: Gonna Keep on Truckin
1 message

---

**Wide Merchant Group via DocuSign** <dse_na2@docusign.net>                Thu, Mar 17, 2022 at 5:24 PM
Reply-To: Wide Merchant Group <info@widemerchantgroup.com>
To: Brandon Callier <callier74@gmail.com>



Wide Merchant Group sent you a document to review and sign.

**REVIEW DOCUMENT**

 **Wide Merchant Group**
info@widemerchantgroup.com

Brandon Callier,

Please DocuSign Contract Gonna Keep on Truckin 03-17-2022.pdf

Thank You, Wide Merchant Group

Powered by **DocuSign**

**Do Not Share This Email**
This email contains a secure link to DocuSign. Please do not share this email, link, or access code with others.

**Alternate Signing Method**
Visit DocuSign.com, click 'Access Documents', and enter the security code:

60ECB2E88BEC44DDBD6AA094848DDD892

**About DocuSign**

Sign documents electronically in just minutes. It's safe, secure, and legally binding. Whether you're in an office, at home, on-the-go -- or even across the globe -- DocuSign provides a professional trusted solution for Digital Transaction Management™.

**Questions about the Document?**

If you need to modify the document or have questions about the details in the document, please reach out to the sender by emailing them directly.

**Stop receiving this email**

Report this email or read more about Declining to sign and Managing notifications.

If you are having trouble signing the document, please visit the Help with Signing page on our Support Center.

 Download the DocuSign App

This message was sent to you by Wide Merchant Group who is using the DocuSign Electronic Signature Service. If you would rather not receive email from this sender you may contact the sender with your request.



                  **Brandon Callier <callier74@gmail.com>**

---

## Reminder: Please DocuSign Contract: Gonna Keep on Truckin

**Wide Merchant Group via DocuSign** <dse_na2@docusign.net>        Fri, Mar 18, 2022 at 5:02 AM
Reply-To: Wide Merchant Group <info@widemerchantgroup.com>
To: Brandon Callier <callier74@gmail.com>



Wide Merchant Group sent you a document to review and sign.

**REVIEW DOCUMENT**

 **Wide Merchant Group**
info@widemerchantgroup.com

Brandon Callier,

Please DocuSign Contract Gonna Keep on Truckin 03-17-2022.pdf

Thank You, Wide Merchant Group

Powered by **DocuSign**

**Do Not Share This Email**
This email contains a secure link to DocuSign. Please do not share this email, link, or access code with others.

**Alternate Signing Method**
Visit DocuSign.com, click 'Access Documents', and enter the security code:
A0EA311A3B47414DB09B703E74776D062

**About DocuSign**

Sign documents electronically in just minutes. It's safe, secure, and legally binding. Whether you're in an office, at home, on-the-go -- or even across the globe -- DocuSign provides a professional trusted solution for Digital Transaction Management™.

**Questions about the Document?**

If you need to modify the document or have questions about the details in the document, please reach out to the sender by emailing them directly.

**Stop receiving this email**

Report this email or read more about Declining to sign and Managing notifications.

If you are having trouble signing the document, please visit the Help with Signing page on our Support Center.

Download the DocuSign App

This message was sent to you by Wide Merchant Group who is using the DocuSign Electronic Signature Service. If you would rather not receive email from this sender you may contact the sender with your request.





**Brandon Callier <callier74@gmail.com>**

## Please DocuSign Contract: Gonna Keep on Truckin

**Wide Merchant Group via DocuSign** <dse_na2@docusign.net>
Reply-To: Wide Merchant Group <info@widemerchantgroup.com>
To: Brandon Callier <callier74@gmail.com>

Mon, Mar 21, 2022 at 9:00 AM

Wide Merchant Group sent you a document to review and sign.

**REVIEW DOCUMENT**

 **Wide Merchant Group**
info@widemerchantgroup.com

Brandon Callier,

Please DocuSign Contract Gonna Keep on Truckin 03-17-2022.pdf

Thank You, Wide Merchant Group

Powered by **DocuSign**

**Do Not Share This Email**
This email contains a secure link to DocuSign. Please do not share this email, link, or access code with others.

**Alternate Signing Method**
Visit DocuSign.com, click 'Access Documents', and enter the security code:
7F122AD6B3D046ECA924E61F32C2EEBF2

**About DocuSign**

Sign documents electronically in just minutes. It's safe, secure, and legally binding. Whether you're in an office, at home, on-the-go -- or even across the globe -- DocuSign provides a professional trusted solution for Digital Transaction Management™.

**Questions about the Document?**

If you need to modify the document or have questions about the details in the document, please reach out to the sender by emailing them directly.

**Stop receiving this email**

Report this email or read more about Declining to sign and Managing notifications.

If you are having trouble signing the document, please visit the Help with Signing page on our Support Center.

Download the DocuSign App

This message was sent to you by Wide Merchant Group who is using the DocuSign Electronic Signature Service. If you would rather not receive email from this sender you may contact the sender with your request.



DEFENDANTS
EXHIBIT

**E**

**Brandon Callier <callier74@gmail.com>**

---

## Please DocuSign Contract: Gonna Keep on Truckin

**Wide Merchant Group via DocuSign** <dse_na2@docusign.net>          Tue, Mar 29, 2022 at 5:11 PM
Reply-To: Wide Merchant Group <info@widemerchantgroup.com>
To: Brandon Callier <callier74@gmail.com>



Wide Merchant Group sent you a document to review and sign.

**REVIEW DOCUMENT**

  **Wide Merchant Group**
       info@widemerchantgroup.com

Brandon Callier,

Please DocuSign Contract Gonna Keep on Truckin 03-17-2022.pdf

Thank You, Wide Merchant Group

Powered by **DocuSign**

**Do Not Share This Email**
This email contains a secure link to DocuSign. Please do not share this email, link, or access code with
others.

**Alternate Signing Method**
Visit DocuSign.com, click 'Access Documents', and enter the security code:
0F511C39FA8448558C315D9868919E162

**About DocuSign**

Sign documents electronically in just minutes. It's safe, secure, and legally binding. Whether you're in an office, at home, on-the-go -- or even across the globe -- DocuSign provides a professional trusted solution for Digital Transaction Management™.

**Questions about the Document?**

If you need to modify the document or have questions about the details in the document, please reach out to the sender by emailing them directly.

**Stop receiving this email**

Report this email or read more about Declining to sign and Managing notifications.

If you are having trouble signing the document, please visit the Help with Signing page on our Support Center.

Download the DocuSign App

This message was sent to you by Wide Merchant Group who is using the DocuSign Electronic Signature Service. If you would rather not receive email from this sender you may contact the sender with your request.



Sign In
(http://merchant.widemerchantgroup)



Wide Merchant Group

Apply Now (/advantage-
program/apply-now)

DecisionLogic

(https://www.decisionlogic.com/(S(ga0r2ncgvgl45hkhslknkqxm))/Landing.aspx?
requestGuid=5ll58468-baef-4d34-81cb-e49470893ce8)

# SMALL BUSINESS IS IN OUR DNA

OUR BUSINESS ADVANCE IS TAILORED TO FIT YOUR
BUSINESS NEEDS!





Apply Now (/advantage-program/apply-now)

# Our Features

## Merchant Advance Made Easy

Our Financing programs are designed with a business owner's mentality so they're always quick, simple and convenient.



**Fixed Rate**

Our Financing Programs are available at a fixed term so keeping track of your progress cannot be any easier.



**Flexible Payables**

Your payables are tailored to account for seasonality and your unique business needs.



**Minimal**

We will only require your three most recent bank statements and a signed application to get you an offer!



**Fast
Funding**

Upon approval, the funds are deposited in your bank account within 24-72 hours!



**Easy
Renewals**

Unlock access to additional capital once you're 40% paid off. The renewal process is easy and we'll only require your most recent statement to give you an offer.

# You Can Get Up To $100,000 In As Little As 48 Hours!

Are you a small-medium sized business owner? Choose from one of our Merchant Financing programs, get approved and receive the funds within 48 hours, and continue growing your business.

Apply Now (/advantage-program/apply-now)

## How It Works



**Apply Online or Call Us**



**Review Financing Options**



**Get Funded**



# Get Access to Additional Funding Once You Have Established a Good History.

To help your business achieve reliable growth, Wide Merchant Group offers you access to business financing when you need it and at terms, you can afford. Creating a trusted and committed partnership with your business is one of our goals.

We customize small business capital and financing solutions to meet a business's specific needs, so you get the funding that's just right for you.

Get Started (/contact-us)















# Get Ahead With Wide Merchant Group

More than 80% of our customers return for another merchant Advance.

Apply Now (/advantage-program/apply-now)

Merchant Login (http://merchant.widemerchantgroup.com/)

# Testimonials

## Tammy Spencer

As a business owner, transparency is crucial for me to trust you as a partner. Wide Merchant Group has a portal where you can keep track of your daily withdrawals so you always know where you stand. From there, I can see how many withdrawals are left on my plan, what current balance is, download my account statement and I can access relevant information about my current advance.

# Merchant Financing Programs

**Daily Merchant Financing**

**Weekly Merchant Financing**

**Credit Card Split**

Consolidation

# Get Started

**Apply Now** (/advantage-program/apply-now)

How It Works (/How-It-Works)About Us (/About-Us)Advantage Program (/Advantage-Program)Contact Us (/Contact-Us)

## Get Social

(https://www.facebook.com/widemerchantgroup) (https://www.linkedin.com/company/widemerchantgroup) (https://www.instagram.com/widemerchantgroup/)(https://page.id?viewAsMember=true)

🔒 **SSL** Your connection to Wide Merchant Group is securely encrypted

Wide Merchant Group
3580 Wilshire Blvd #1160
Los Angeles, CA 90010
800-630-4214

Copyright © 2018 Wide Merchant Group – All Rights Reserved | Privacy Policy (/privacy-policy)





Brandon Callier <callier74@gmail.com>

---

## Requesting Bank Statements for GONNA KEEP ON TRUCKIN LLC
4 messages

---

**Aaron Cruz** <aaron@synergyfinancellc.com>                    Thu, Jun 23, 2022 at 9:37 AM
To: Brandon Callier <callier74@gmail.com>

### Hello Brandon,

I hope you're doing well. I'm expecting the requested documentation today! Please send me the last 4 months of business bank statements for the underwriting process. We make an underwriting decision within two hours and are able to release the wire of funds the same day.

### Bank Statements Required:

- February 2022
- March  2022
- April 2022
- May 2022

---

**Should you have any questions or concerns please feel free to contact me at my direct number 917 387 4655 or via email. An update from your side will be highly appreciated. Thank you!**

---

## Aaron Cruz                                    ## Synergy Financial

**M:** (917) 387-4655                        **Phone**: 888-269-3505
**T:** (888)808-3525, Ext#105              Info@synergyfinancellc.com
**F:** (888)303-0299
**E:** aaron@synergyfinancellc.com

CONFIDENTIALITY NOTICE: The contents of this email message and any attachments are intended solely for the addressee(s) and may contain confidential and/or privileged information and may be legally protected from disclosure. If you are not the intended recipient of this message or their agent, or if this message has been addressed to you in error, please immediately alert the sender by reply email and then delete this message and any attachments. If you are not the intended recipient, you are hereby notified that any use, dissemination, copying, or storage of this message or its attachments is strictly prohibited.

---

**Brandon Callier** <callier74@gmail.com>                    Thu, Jun 23, 2022 at 9:53 AM
To: Aaron Cruz <aaron@synergyfinancellc.com>

Hi Aaron,

Is the loan through Wide Merchant? My buddy got funded through them and he seems to like them.

[Quoted text hidden]

---

**Aaron Cruz** <aaron@synergyfinancellc.com>                    Thu, Jun 23, 2022 at 9:56 AM
To: Brandon Callier <callier74@gmail.com>

Yes

[Quoted text hidden]

--
## Best Regards!

----



### Aaron Cruz

**Sr. Funding Coordinator | Synergy Financial LLC**

Your limitation is only your imagination.

**M:** (917) 387-4655
**T:** (888) 269-3505, Ext#105
**F:** (888) 303-0299
**E:** aaron@synergyfinancellc.com
**W:** https://synergyfinancellc.com/



[Quoted text hidden]

---

**Aaron Cruz** <aaron@synergyfinancellc.com>                    Thu, Jun 23, 2022 at 1:28 PM
To: Brandon Callier <callier74@gmail.com>

Hi **Brandon**,

I hope you're doing well. I'm expecting the requested documentation today! Please send me the last 4 months of business bank statements along with the signed application for the underwriting process. We make an underwriting decision within two hours and are able to release the wire of funds the same day.

An update from your side will be highly appreciated. I hope to hear from you soon. Thank you!

 Sender notified by
Mailtrack          [ Remove signature ]

[Quoted text hidden]



PLAINTIFF'S
EXHIBIT

H

**A SIMPLE WAY** TO FINANACE YOUR BUSINESS Qualify Up to $500,000

Get approved within 24 hours by starting here.

(get_funded.html)

Get Started

Synergy Financial

Synergy Financial offers flexible, working capital solutions to small businesses in need of financing to sustain or grow their enterprise. We place a high value on trust & transparency while providing businesses with simple, quick, and customized financial solutions while utilizing our state-of-the-art technology platform. Today, Synergy Financial continues to remain a competitive leader with one of the most extensive offerings & services in the small business industry. We remain dedicated to developing new, innovative ways to serve companies in an ever-changing financial market. Synergy Financial has provided more than $350 million to over 40,000 customers.

**Fill Out Our Simple Online Application**

It's fast and easy. Again, you don't need any personal financial information to submit your application and be considered. Everything is based on business performance. If you have any questions, we're standing by to help you.

Get Started... (get_funded.html)

**Consult With Our Loan Advisors**

○

Based on your application, we'll help you consider all your options and pick the best financial solution for you. We know the challenges small businesses face and will offer expert advice for your unique situation.

Get Started... (get_funded.html)

**Close On Your Loan Or Line Of Credit**

○

We'll help guide you through the entire process, serving as your personal liaison to over a hundred fine lenders. It's what we do every day, serving small businesses like yours throughout the U.S.

Case 2:22-cv-01123-HM    Document 23 Filed 09/01/22    Page 3 of 5

8/22/22, 12:01 PM

Get Started... (get_funded.html)

**Get**
**Funded Easily**

0

Our loan consultants will contact you with approval. In as few as 24 hours, you could secure the working capital you need and peace of mind you want.

Get Started... (get_funded.html)

# AN EASY APPLICATION PROCESS

WITH NO **PERSONAL COLLATERAL REQUIRED**

Synergy Financial's approval process doesn't tie you up with personal red tape. It's based solely on business performance, not yours.

**Over 80% of Our Applicants Are Approved**

We believe in your success. For over a decade, Synergy Financial has helped thousands of businesses just like yours secure over $350 million.

Learn More  >
(get_funded.html)

8/22/22, 12:01 PM

# BUSINESS FUNDING MADE EASY!

❯  80% of Applicants Approved

❯  Lowest Rates

❯  24 Hour Funding

❯  No Collateral

❯  Flexible Payment Options

❯  Credit Never An Issue

Get Started  ❯
(about-us.html)

# Sign Up For Our Monthly Newsletter

Your Email Address

Subscribe

Get In Touch With **Synergy Financial**

**About Company**

**Synergy Financial** offers flexible, working capital solutions to small businesses in need of financing to sustain or grow their enterprise. We place a high value on trust & transparency while providing businesses with simple, quick, and customized financial solutions while utilizing our state-of-the-art technology platform.

Read more... (about-us.html)

https://www.synergyfinancellc.com

Case 2:22-cv-01123-HWM   Document 23-1   Filed 10/10/22   Page 5 of 5

**Contact Information**

⬢ () ✈ () ⊚ () G () ⊛ () ⬢ () 🔊 ()

◉ 100 William Street 7th Floor New York, NY 10038 United States

◉ 2563 Major Mackenzie Dr, Maple, Ontario, L6A2E8 Canada

◉ 52 Martin Pl, Sydney, NSW 2000 Australia

(888) 303-0299 - Fax
(917) 909-5706 - Phone

✉ info@synergyfinancellc.com (mailto: info@synergyfinancellc.com)

Developed by loopbacs (http://www.loopbacs.com/)



PLAINTIFF'S
EXHIBIT

H
___



PLAINTIFF'S
EXHIBIT

I

**M** Gmail                                                                     **Brandon Callier <callier74@gmail.com>**

---

## Requesting Bank Statements
1 message

**Aaron Cruz** <aaron@synergyfinancellc.com>                      Fri, Aug 19, 2022 at 11:48 AM
Bcc: callier74@gmail.com

### Hello,

I hope you're doing well. I'm expecting the requested documentation today! Please
send me the last 4 months of business bank statements for the underwriting
process. We make an underwriting decision within two hours and are able to
release the wire of funds the same day.

### Bank Statements Required:

- **April 2022**
- **May 2022**
- **June 2022**
- **July 2022**

---

**Should you have any questions or concerns please feel free to contact me at my direct number 917 387 4655
or via email. An update from your side will be highly appreciated. Thank you!**

---

## Aaron Cruz                                      ## Synergy Financial

**M:** (917) 387-4655                              **Phone**: 888-269-3505
**T:** (888)808-3525, Ext#105                      Info@synergyfinancellc.com
**F:** (888)303-0299
**E:** aaron@synergyfinancellc.com

CONFIDENTIALITY NOTICE: The contents of this email message and any attachments are intended solely for the addressee(s) and may contain confidential and/or privileged information and may be legally protected from disclosure. If you are not the intended recipient of this message or their agent, or if this message has been addressed to you in error, please immediately alert the sender by reply email and then delete this message and any attachments. If you are not the intended recipient, you are hereby notified that any use, dissemination, copying, or storage of this message or its attachments is strictly prohibited.

   Sender notified by
                        Mailtrack



PLAINTIFFS
EXHIBIT
**J**

## Gmail

Brandon Callier <callier74@gmail.com>

---

### Loan Approval Documentations Needed!!

**Aaron Cruz** <aaron@synergyfinancellc.com>                 Tue, Aug 23, 2022 at 9:36 AM
Bcc: callier74@gmail.com

# Synergy Financial

Application

## As We Spoke!

Thanks for your interest in Synergy Finance, to let you know the exact rate and term we need to do the underwriting and first decide what's the best fit for your business and the most flexible breakdown possible. To underwrite, we need to go through the documentation which is pretty simple and the offer will be a NO Obligation/NO cost for UW.

## We are the one-stop financial solution, we provide the following financial services:

◎ **Short-term loan: Rate starts as low as 8%**
◎ **LOC: Revolving LOC, up to $150k on an average term of 12 months (renewable)**
◎ **Long Term: 5 years term (Credit Required: Above 680)**
◎ **Short Term: 3 Months - 18 Months Term**

## How To Start!

◎ **Click on the Application button at the top, Fill in the boxes, click on the download icon from the top right corner, select "with your changes, "attach the downloaded application with this Email, and reply.**
◉ **PDF and Fillable PDF Applications are also attached to this Email.**

---

## Required Documents!

◉ **Signed up Application**
◉ **4 most recent Bank Statements (ALL PAGES), March 2022, April 2022, May 2022, and June 2022**

**Application is attached with the Email or sent via DocuSign, Bank statements should be in PDF Format.**

***Offers vary from business to business and are subject to change in the underwriting process.***

Please do the documentation to proceed, and reach me at my direct line at 917-387-4655 for any further queries, I hope to hear back from you soon!

## Aaron Cruz                          Synergy Finance

**Sr. Funding Manager**                    **Phone: 888-269-3505**
**M: 917-387-4655**                        **Info@synergyfinancellc.com**
**F: 888-303-0299**
**E: aaron@synergyfinancellc.com**

 Sender notified by
Mailtrack

📄 **USA Loan App Fillable.pdf**
481K





PLAINTIFF'S EXHIBIT

L



Brandon Callier <callier74@gmail.com>

---

## Synergy Finance Loan Application

1 message

**Dan Brown** <dan@synergyfinancellc.com>                           Thu, Aug 11, 2022 at 5:00 PM
To: Dan Brown <dan@synergyfinancellc.com>
Bcc: callier74@gmail.com

Hello,

Thank you so much for allowing me to speak to you about Synergy Financial's resources for business owners like yourself. Just to recap, since we are a direct source of funds, we can offer some of the inexpensive rates in the industry. The good news is based on your business profile you furnish nicely into our business loan programs! Our programs offer very dynamic rates and terms specific to your industry. Synergy Financial's Business Loan Programs provide you with access to the cash you need to grow and flourish without restrictions on how the money is used.

- **No Collateral is required**

- **No Obligation & Up-front cost**

- **Poor credit is not a barrier**

- **Daily or Weekly Repayment Option**

- **Funding within SAME business day**

It's easy to get started. Please complete the attached application and either fax or email it back to me. The following is all that is needed for approval and to receive an offer from us which will be valid for the next 30 days.

1. **Signed up Application**

2. **3 most recent Bank Statements (ALL PAGES)**

I will have approval numbers for you very soon upon receipt of your application and your documents will be kept protected. Once I have an offer, we will contact you immediately to go over all the details. We acknowledge the opportunity to provide you with the working capital to expand and grow your business. We look forward to having a good business deal with you. If you have any queries feel free to email me back or reach me at my direct line at 917-765-3437.

Hope to hear from you soon.

--
Thank you,

**M:** (917) 765-3437
**P:** (888) 269 3505, Ext# 101
**F:** (888) 303 0299
**E:** dan@synergyfinancellc.com

synergyfinancellc.com/



**Dan Brown**
Sr. Funding Coordinator



📄 **Fillable_Application.pdf**
413K