BUCHALTER
A Professional Corporation
GABRIEL G. GREEN (SBN: 222445)
ARTIN BETPERA (SBN: 244477)
ELAINE Y. CHENG (SBN: 359685)
1000 Wilshire Boulevard, Suite 1500
Los Angeles, CA 90017-1730
Telephone: 213.891.0700
Fax: 213.896.0400
Email: ggreen@buchalter.com
       abetpera@buchalter.com
       echeng@buchalter.com

Attorneys for Defendants
WIDE MERCHANT INVESTMENT, INC.,
WIDE MERCHANT HOLDINGS, INC.
BLUE COAST SERVICE, INC.
DAVID BOEM JOON KIM

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### WESTERN DIVISION

| | |
|---|---|
| BRANDON CALLIER, an individual,<br><br>    Plaintiff,<br><br>  vs.<br><br>WIDE MERCHANT INVESTMENT, INC., a dissolved California corporation, WIDE MERCHANT HOLDINGS, INC., a Nevada corporation, BLUE COAST SERVICE, INC., a Nevada corporation, and DAVID BOEM JOON KIM, an individual,<br><br>    Defendants. | Case No. 2:24-CV-10131-MEF-JC<br><br>**NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT**<br><br>[Concurrently Filed with Request for Judicial Notice and [Proposed] Order]<br><br>Date:  May 29, 2025<br>Time:  10:00 A.M.<br>Judge:  Hon. Maame Ewusi-Mensah Frimpong |

**TO THE CLERK OF THE COURT OF THE UNITED STATES DISTRICT COURT FOR THE CENTRAL DISTRICT OF CALIFORNIA AND TO ALL PARTIES AND THEIR COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE** that on May 29, 2025 at 10:00 a.m. or as soon thereafter as counsel may be heard in Courtroom 8B, 8th Floor, located at 350 West First Street, Los Angeles, CA 90012, Defendants Wide Merchant Investment, Inc., Wide Merchant Holdings, Inc., Blue Coast Service, Inc., and David Boem Joon Kim will and hereby do bring a Motion to Dismiss ("Motion").

Defendants hereby move this Court for an Order dismissing this action pursuant to Fed. R. Civ. P. Rule 12(b)(6) on the basis that:

(1)    All of Plaintiff Brandon Callier's ("Plaintiff") claims fail as a matter of law because Plaintiff is precluded from reasserting an agency relationship between Synergy Financial and Wide Merchant Investment.

(2)    Plaintiff's Vicarious Liability cause of action fails to state facts sufficient to assert this claim. Specifically, it fails to allege sufficient facts showing Defendants authorized or controlled Synergy's telemarketing conduct.

(3)    Plaintiff's Successor Liability cause of action fails to state facts sufficient to assert this claim. Specifically, it fails to demonstrate any of the four limited exceptions to the general rule against corporate successor liability.

(4)    Plaintiff's Texas statutory claims fail as a matter of law as it conflicts with California's policy choice to prohibit private enforcement of analogous telemarking laws.

This Motion is based upon this Notice of Motion, the Memorandum of Points and Authorities in Support of Motion, the pleadings and records on file herein, such further papers as may be filed in connection with this Motion to Dismiss, and on such further argument and materials that the Court may consider.

1  DATED:  April 15, 2025

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

BUCHALTER
A Professional Corporation


By: _____
GABRIEL G. GREEN
ARTIN BETPERA
ELAINE Y. CHENG

Attorneys for Defendants
WIDE MERCHANT INVESTMENT, INC.
WIDE MERCHANT HOLDINGS, INC.
BLUE COAST SERVICE, INC.
DAVID BOEM JOON KIM

BN 88399914

BUCHALTER
A PROFESSIONAL CORPORATION
LOS ANGELES

3

**MOTION TO DISMISS**

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ................................................................................. 9

II.    RELEVANT FACTUAL BACKGROUND ................................................ 10

III.    RELEVANT PROCEDURAL HISTORY ................................................. 11

IV.    LEGAL STANDARD ............................................................................ 11

V.    DISCUSSION .................................................................................... 12

    A.    Plaintiff Has Failed to Plausibly Plead That the WMI Defendants or Kim Are Vicariously Liable for Synergy's Allegedly Unlawful Telemarketing Calls Under Any Agency Theory. ................................................................ 12

        1.    Plaintiff Cannot Plausibly Plead That Defendants Expressly Authorized, or Controlled the Manner and Means of Telemarketing Calls by Synergy. ................................................................ 13

        2.    Plaintiff Has Failed to Plausibly Plead Apparent Authority Based On Any Alleged Manifestations By The WMI Defendants. ......................... 18

        3.    Plaintiff Has Failed to Plausibly Plead Ratification. ................................ 19

        4.    Plaintiff is Collaterally Estopped From Alleging Vicarious Liability. ..... 20

    B.    Plaintiff's Successor Liability Claim Fails. ...................................... 21

        1.    No Express or Implied Assumption of Liabilities. ................................. 22

        2.    There is No De Facto Merger. ................................................. 22

        3.    "Mere Continuation" Requires More Than Common Ownership. ........... 23

        4.    Fraudulent Transfer Allegations Are Conclusory and Deficient. ............. 24

    C.    The Court Should Decline Supplemental Jurisdiction Over Plaintiff's Texas Statutory Claims Under Choice of Law Principles and 28 U.S.C. § 1367. .......... 24

        1.    Texas and California Law Are in Direct Conflict. ................................... 25

VI.    CONCLUSION .................................................................................. 26

BUCHALTER
A PROFESSIONAL CORPORATION
LOS ANGELES

**MOTION TO DISMISS**

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Abante Rooter & Plumbing Inc. v. Mahalo,*
  No. 18-cv-07311-VC, 2019 U.S. Dist. LEXIS 220708 (N.D. Cal. Dec. 19, 2019) ................................................................................................... 18

*Armstrong v. Investor's Bus. Daily, Inc.,*
  No. CV 18-2134-MWF, 2020 U.S. Dist. LEXIS 76694 (C.D. Cal. Mar. 6, 2020) ..................................................................................................... 14

*Ashcroft v. Iqbal,*
  556 U.S. 662 (2009) .................................................................... 11, 22

*Aulson v. Blanchard,*
  83 F.3d 1 (1st Cir. 1996) ...................................................................... 12

*Barnes v. SunPower Corp.,*
  No. 22-CV-04299-TLT, 2023 WL 2592371 (N.D. Cal. Mar. 16, 2023) ............................ 16

*Batzel v. Smith,*
  333 F.3d 1018 (9th Cir. 2003) .............................................................. 19

*Callier v. Wide Merchant Investment, Inc.,*
  671 F. Supp. 3d 736 (W.D. Tex. 2023) ........................................ 9, 11, 16, 21

*Canary v. Youngevity Int'l, Inc.,*
  No. 5:18-cv-03261-EJD, 2019 U.S. Dist. LEXIS 46429 (N.D. Cal. Mar. 20, 2019) ..................................................................................... 14, 15, 18

*Canary v. Youngevity Int'l, Inc.,*
  No. 5:18-CV-03261-EJD, 2019 WL 1275343 (N.D. Cal. Mar. 20, 2019) .......... 16, 17, 19, 20

*Cassirer v. Thyssen-Bornemisza Collection Found.,*
  69 F.4th 554 (9th Cir. 2023) .................................................................. 25

*Cherkaoui v. Santander Consumer USA, Inc.,*
  32 F.Supp.3d 811 (S.D. Tex. 2014) ........................................................ 26

*Ewing v. Encor Solar, LLC,*
  No. 18-CV-2247-CAB-MDD, 2019 U.S. Dist. LEXIS 10270 (S.D. Cal. Jan. 22, 2019) ..................................................................................... 14

*Fabricant v. Elavon, Inc.,*
  No. 220CV02960SVWMAA, 2020 WL 11884505 (C.D. Cal. Aug. 25, 2020) .................... 17

*Franklin v. USX Corp.* (2001)
  87 Cal. App. 4th 615 ............................................................................ 23

BUCHALTER
A PROFESSIONAL CORPORATION
LOS ANGELES

**MOTION TO DISMISS**

*Gomez v. Campbell-Ewald Co.*,
   768 F.3d 871, 879 (9th Cir. 2014) ...................................................................... 12

*Hunsinger v. Buyers*,
   No. 3:21-cv-1598-D, 2022 U.S. Dist. LEXIS 32319 (N.D. Tex. Feb. 24, 2022)................... 26

*Jones v. Royal Admin. Servs.*,
   887 F.3d 443, 449 ....................................................................................... 13, 14

*Jorge Valdes v. Nationwide Real Est. Executives, Inc.*,
   No. SACV2001734DOCJDEX, 2021 WL 2134159 (C.D. Cal. Apr. 22, 2021) .............. 17, 20

*Kristensen v. Credit Payment Servs.*,
   879 F.3d 1010 ................................................................................................ 19

*Linlor v. Five9, Inc.*,
   No. 17CV218-MMA (BLM), 2017 U.S. Dist. LEXIS 108162 (S.D. Cal. July
   11, 2017)........................................................................................................ 14

*Makaron v. GE Sec. Mfg.*,
   No. 14-CV-1274-GW(ARGx), 2015 U.S. Dist. LEXIS 75240 (.CD. Cal. May
   18, 2015)................................................................................................... 13, 18

*Malone v. Red Top Cab Co.* (1936)
   16 Cal.App.2d 268 ......................................................................................... 23

*McQuillion v. Schwarzenegger*,
   369 F.3d 1091 (9th Cir. 2004) ........................................................................... 21

*Naiman v. TranzVia LLC*,
   No. 17-cv-4813-PJH, 2017 U.S. Dist. LEXIS 199131 (N.D. Cal. Dec. 4, 2017) ................ 14

*Naiman v. TranzVia LLC*,
   No. 17-CV-4813-PJH, 2017 WL 5992123 (N.D. Cal. Dec. 4, 2017)............................ 17, 19

*NLRB v. Dist. Council of Iron Workers*,
   124 F.3d 1094 (9th Cir. 1997) ........................................................................... 18

*Pareto v. FDIC*,
   139 F.3d 696 (9th Cir. 1998) ............................................................................. 12

*Pascal v. Agentra, LLC*,
   No. 19-cv-02418-DMR, 2019 U.S. Dist. LEXIS 179359 (N.D. Cal. Oct. 16,
   2019) ........................................................................................................... 14

*Pierce v. Riverside Mortg. Sec. Co.*,
   25 Cal. App. 2d 248 (1938) ............................................................................... 21

*Ray v. Alad Corp.*,
   19 Cal. 3d 22 (1977) .................................................................................... 22, 23

BUCHALTER
A PROFESSIONAL CORPORATION
LOS ANGELES

**MOTION TO DISMISS**

*Rogers v. Postmates Inc.*,
   No. 19-cv-05619-TSH, 2020 U.S. Dist. LEXIS 36626 (N.D. Cal. Mar. 3, 2020) ................ 14

*Sanford v. MemberWorks, Inc.*,
   625 F.3d 550 (9th Cir. 2010) ........................................................................................... 24

*Sapan v. Shore Cap. Corp.*,
   No. 8:23-CV-01974-FWS-JDE, 2024 WL 4002622 (C.D. Cal. Aug. 23, 2024) .................. 20

*Shanahan v. Nat'l Auto Prot. Corp.*,
   No. 1:19-CV-03788, 2020 WL 3058088 (N.D. Ill. June 9, 2020) ...................................... 19

*Sheski v. Shopify (USA) Inc.*,
   No. 19-cv-06858-HSG, 2020 U.S. Dist. LEXIS 84433 (N.D. Cal. May 13,
   2020) .............................................................................................................................. 14

*Thomas v. Taco Bell Corp.*,
   582 F. App'x 678 (9th Cir. 2014)............................................................................12, 13, 18

*Thomas v. Taco Bell Corp.*,
   879 F. Supp. 2d 1079 (C.D. Cal. 2012) ........................................................................... 13

*Transphase Systems, Inc. v. Southern California Edison Co.*,
   839 F. Supp. 711 (C.D. Cal. 1993) .................................................................................. 12

*Vess v. Ciba-Geigy Corp. USA*,
   317 F.3d 1097 (9th Cir. 2003) ......................................................................................... 24

*Von Saher v. Norton Simon Museum of Art at Pasadena*,
   592 F.3d 954 (9th Cir. 2010) ........................................................................................... 12

*Winters v. Grand Caribbean Cruises Inc.*,
   No. CV-20-00168-PHX-DWL, 2021 WL 511217 (D. Ariz. Feb. 11, 2021) ....................... 17

**Statutes**

28 U.S.C. § 1367 ................................................................................................................ 24

47 U.S.C. § 227 ................................................................................................................. 25

Business and Professions Code §§ 17590-17594 ................................................................ 25

Public Utilities Code §§ 2871-2876 ................................................................................... 25

Telephone Consumer Protection Act ........................................................................... *passim*

Texas Bus. & Commerce Code § 1367(c) ........................................................................... 25

Texas Bus. & Commerce Code § 302.101 ........................................................................... 24

Texas Bus. & Commerce Code § 305.053 ..................................................................... 24, 26

BUCHALTER
A PROFESSIONAL CORPORATION
LOS ANGELES

7

**MOTION TO DISMISS**

Texas Bus. & Commerce Code § 305.053(a)................................................................ 25

**Court Rules**

Fed. R. Civ. P. 9(b)........................................................................................................ 24

Fed. R. Civ. P. 12(b)(2).................................................................................................. 11

Fed. R. Civ. P. 12(b)(6)..................................................................................... 11, 12, 17

**Other Authorities**

Restatement (Third) of Agency, § 1.01, Comment f (2006) ......................................... 13

Restatement (Third) Of Agency § 3.03, Comment b (2006) ........................................ 18

Restatement (Third) Of Agency § 7.08 (2006) ............................................................ 18

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I.    INTRODUCTION

Plaintiff Brandon Callier, a serial filer of TCPA lawsuits, alleges that Defendants Wide Merchant Investment Inc. ("WMI"), Wide Merchant Investment Holdings, Inc. ("WMI Holdings"), and Blue Coast Service, Inc. ("BCS") (collectively, the "WMI Defendants") are vicariously liable for over 100 telephone calls allegedly made to Plaintiff by a third party called Synergy Financial ("Synergy") purportedly in violation of the Telephone Consumer Protection Act ("TCPA") and Texas Business and Commerce Code. Plaintiff also seeks to hold Defendant David Boem Joon Kim ("Kim"), an officer of the WMI Defendants, personally liable for Synergy's alleged TCPA violations. Plaintiff's claims are not based on any alleged facts but instead simply rely on nothing more than a litany of conclusory allegations. As such, he has failed to plausibly plead that either the WMI Defendants or Kim may be liable for Synergy's alleged TCPA violations.

Notably, Plaintiff initially filed his claims in the United States District Court for the Western District of Texas, originally naming just Kim and WMI as defendants (the "Texas Action"). Request for Judicial Notice ("RJN"), Ex. 1. After being given multiple opportunities to plead his claims against Kim and WMI, the court dismissed Plaintiff's claims for lack of personal jurisdiction. In the court's detailed ruling, it found that neither Kim nor WMI could be vicariously liable for Synergy's alleged TCPA violations because Synergy was not acting as an agent of either defendant when making alleged calls to Plaintiff. *Callier v. Wide Merchant Investment, Inc.*, 671 F. Supp. 3d 736 (W.D. Tex. 2023).

In November 2024, over one year after the dismissal of the Texas Action, Plaintiff filed his original complaint in this case. Several months later, Plaintiff filed his operative First Amended Complaint ("FAC"). Plaintiff's FAC is substantially similar to the complaint he filed in the Texas Action—that is to say, it is principally based on a hodgepodge of conclusory allegations.

As discussed below, Plaintiff has failed to plausibly plead that any of the Defendants are liable, under any theory, for the alleged TCPA violations committed by Synergy. Accordingly,

1  the Court should grant Defendants' motion, and dismiss Plaintiff's FAC.

2  ## II.    RELEVANT FACTUAL BACKGROUND

3       WMI Holdings is a purchasing company engaged in the business of purchasing future

4  receivables from merchants at a discounted price, sometimes referred to as a merchant cash

5  advance.  Plaintiff alleges that WMI Holdings is the successor to WMI, and that BCS is an entity

6  affiliated with WMI Holdings. First Amended Complaint, Dkt. 16 ("FAC"), ¶ 52, 127.  Kim is

7  alleged to be an officer of the WMI Defendants.  FAC, ¶ 52.

8       Plaintiff alleges that he received unlawful telemarketing calls from Synergy between

9  October 2021 and August 2022.  FAC, ¶ 127.  Synergy's calls were allegedly for the purpose of

10  soliciting Plaintiff to apply for "business funding" from WMI.  FAC, ¶ 46.  According to the

11  FAC, Plaintiff engaged the individual from Synergy who called him, and eventually submitted

12  some kind of application to Synergy under false pretenses to "identify[] the United States-based

13  company on whose behalf Synergy was placing the phone calls."  FAC, ¶ 70.  Plaintiff alleges

14  that after he submitted this fraudulent application, "Plaintiff received a contract for $40,000

15  directly from WMI via an email from info@widemerchant.com."  FAC, ¶ 71.  Plaintiff alleges

16  that during a phone call he had with Synergy on March 18, 2022, Synergy stated that WMI was

17  "one of our subsidiary companies."  FAC, ¶ 72.

18       Plaintiff does not allege that that any of the defendants made any calls to him, or that he

19  interacted in any way with anyone at WMI, WMI Holdings, or BCS.  Rather, Plaintiff claims that

20  the collective defendants are vicariously liability for Synergy's alleged violations of the law based

21  upon a series of conclusory allegations, such as "Synergy calls potential borrowers at the

22  direction of BCS and WMI," "WMI directly participates in the calling campaign," "Synergy acted

23  as an authorized agent of Defendants BCS and Wide Merchant," and "Defendants Wide Marchant

24  and Kim gave express authority and apparent authority to Synergy Financial with full knowledge

25  the administration of sales and solicitation of sales would be conducted via TCPA violating phone

26  calls."  FAC, ¶¶90, 99, 121, 141.  Plaintiff also alleges that Kim is personally liable for Synergy's

27  TCPA violations because Kim "personally participate[d]," in Synergy's "calling campaign."

28  FAC, ¶ 124.

Plaintiff further alleges that because he believes the entities were created by the same individual, uses the same website, and operates at the same address, and that he believes that WMI Holdings acquired all of WMI's assets without paying fair value for consideration, WMI Holdings is liable for WMI's actions as a successor-in-interest. FAC, ¶¶ 6-7, 180-182, 203-206.

## III.    RELEVANT PROCEDURAL HISTORY

Plaintiff originally filed his claims in the United States District Court for the Western District of Texas (the "Texas Action"). Plaintiff twice amended his claims in the face of motions to dismiss filed by the Defendants in that case, eventually filing a Second Amended Complaint in the Texas Action. RJN, Ex. 1. On April 27, 2023, the court dismissed Plaintiff's SAC pursuant to Fed. R. Civ. P. 12(b)(2). See *Callier v. Wide Merchant Investment, Inc. et al.*, 671 F. Supp. 3d 736 (W.D. Tex. 2023). In its ruling, the court found that Plaintiff had failed to establish that Synergy was acting as the agent of either Kim or WMI because:

- Neither Kim nor WMI had any knowledge of the calls allegedly made by Synergy;
- Neither Kim nor WMI had any control over the calls allegedly made by Synergy;
- Until Plaintiff had filed the Texas Action, neither Kim nor WMI had received complaints of Synergy making unlawful telemarketing calls;
- Following WMI and Kim's notice of this lawsuit, WMI requested Synergy stop calling Plaintiff. After WMI learned that Plaintiff continued to receive calls from Synergy, BCS terminated its contract with Synergy.

*Id*. at 744-46.

Well over a year after the dismissal of the Texas Action, Plaintiff filed his complaint in the instant action on November 21, 2024. Dkt. 1. Plaintiff filed his operative First Amended Complaint ("FAC") on March 16, 2025. Dkt. 16.

## IV.    LEGAL STANDARD

To survive a Rule 12(b)(6) motion to dismiss, a plaintiff must "state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). This includes "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007)). Further, "courts need

not accept as true legal conclusions or '[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements ….only a complaint that states a plausible claim for relief with well-pleaded facts demonstrating the pleader's entitlement to relief can survive a motion to dismiss." *Id.* at 678–79. Material facts alleged in the complaint are treated as true when ruling on the Rule 12(b)(6) motion; however, conclusory allegations, legal characterizations, unreasonable inferences or deductions of fact, and allegations that are contradicted by the judicially noticeable matter are not considered in judging the pleadings' sufficiency. (*Pareto v. FDIC*, 139 F.3d 696, 699 (9th Cir. 1998); *Von Saher v. Norton Simon Museum of Art at Pasadena*, 592 F.3d 954, 960 (9th Cir. 2010) (The court need not accept as true allegations that contradict judicially noticeable facts); *Aulson v. Blanchard*, 83 F.3d 1, 3 (1st Cir. 1996) (stating courts need not "swallow the plaintiff's invective hook, line, and sinker; bald assertions, unsupportable conclusions, periphrastic circumlocutions, and the like need not be credited"); *Transphase Systems, Inc. v. Southern California Edison Co.*, 839 F. Supp. 711, 718 (C.D. Cal. 1993).)

## V. DISCUSSION

### A. Plaintiff Has Failed to Plausibly Plead That the WMI Defendants or Kim Are Vicariously Liable for Synergy's Allegedly Unlawful Telemarketing Calls Under Any Agency Theory.

Plaintiff theorizes in his complaint that WMI, WMI Holdings, and BCS are all related entities which are controlled by Kim. FAC, ¶ 52. He claims that the WMI Defendants, along with Kim, are vicariously liable for the violations of the TCPA and Texas Business and Commerce Code violations allegedly committed by Synergy. See FAC, ¶¶ 139-160.

The Ninth Circuit has held that "vicarious liability can provide the basis for liability for a TCPA violation." *Thomas v. Taco Bell Corp.*, 582 Fed. Appx. 678, 679 (9th Cir. 2014). "[A] defendant may be held vicariously liable for TCPA violations where the plaintiff establishes an agency relationship, as defined by federal common law, between the defendant and a third-party caller." *Gomez v. Campbell-Ewald Co.*, 768 F.3d 871, 879 (9th Cir. 2014). Courts examine vicarious liability for TCPA violations under three "bedrock" theories of agency: actual authority,

apparent authority, and ratification. *Jones v. Royal Admin. Servs.*, 887 F.3d 443, 449.  Plaintiff, however, is unable to establish any vicarious liability on the part of the WMI Defendants and/or Kim.

### 1.    Plaintiff Cannot Plausibly Plead That Defendants Expressly Authorized, or Controlled the Manner and Means of Telemarketing Calls by Synergy.

In order to establish vicarious liability under an actual authority theory, Plaintiff must establish both "an agency relationship," and "actual authority to place the unlawful calls." *Id*. "Agency is the fiduciary relationship that arises when one person (a 'principal') manifests assent to another person (an 'agent') that the agent shall act on the principal's behalf and subject to the principal's control, and the agent manifests assent or otherwise consents so to act." *Id*. at 448 (citing to *Mavrix Photographs, LLC v. LiveJournal, Inc.*, 873 F.3d 1045 (9th Cir. 2017)). Importantly, "agency means more than passive permission; it involves request, instruction, or command." *Thomas v. Taco Bell Corp.*, 879 F. Supp. 2d 1079, 1085 (C.D. Cal. 2012) (internal quotation marks and citation omitted). Thus, "[f]or an agency relationship to exist, an agent must have authority to act on behalf of the principal and the person represented must have a right to control the actions of the agent." *Jones*, 887 F.3d at 448. (internal quotation marks and brackets omitted). The Ninth Circuit has emphasized that "[i]n determining whether vicarious liability may be imposed, the extent of control exercised by the principal is the essential ingredient." *Id*. at 450 (citing to *United States v. Bonds*, 608 F.3d 495, 505 (9th Cir. 2010)) (internal quotation marks omitted), *accord* Restatement (Third) of Agency, § 1.01, cmt. f (2006) ("A relationship of agency is not present unless the person on whose behalf action is taken has the right to control the actor.")

In the context of the TCPA, courts within the Ninth Circuit have repeatedly held that to establish a formal agency relationship, the plaintiff must show that the alleged principal "controlled ... the manner and means," of the calls at issue. *See Thomas v. Taco Bell Corp.*, 879 F. Supp. 2d 1079, 1084 (C.D. Cal. 2012), aff'd, 582 F. App'x. 678 (9th Cir. 2014); *Makaron v. GE Sec. Mfg.*, No. 14-CV-1274-GW(ARGx), 2015 U.S. Dist. LEXIS 75240, at *19 (.CD. Cal. May 18, 2015) (granting summary judgment where there was "no evidence that [the defendant]

controlled or directed the marketing campaigns of its authorized dealers, much less the specific marketing campaigns that targeted Plaintiffs in this case."); *Naiman v. TranzVia LLC*, No. 17-cv-4813-PJH, 2017 U.S. Dist. LEXIS 199131, at *29-30 (N.D. Cal. Dec. 4, 2017) (same); *Linlor v. Five9, Inc.*, No. 17CV218-MMA (BLM), 2017 U.S. Dist. LEXIS 108162, at *9 (S.D. Cal. July 11, 2017) ("In order to allege a traditional agency relationship, Plaintiff would have to allege Defendant "controlled or had the right to control [the entity responsible for the text messages] and, more specifically, the manner and means of the text message campaign they conducted.") (brackets in original); *Ewing v. Encor Solar, LLC*, No. 18-CV-2247-CAB-MDD, 2019 U.S. Dist. LEXIS 10270, at *17 (S.D. Cal. Jan. 22, 2019) ("for Encor to be liable under an agency theory Plaintiff must show that it controlled or had the right to control Sunrun, Bargain Electricity and the other named defendants - specifically the manner and means of all the calls made to Ewing."); *Canary v. Youngevity Int'l, Inc.*, No. 5:18-cv-03261-EJD, 2019 U.S. Dist. LEXIS 46429, at *16 (N.D. Cal. Mar. 20, 2019) ("To establish vicarious liability for a TCPA violation, a plaintiff must allege facts to show that the defendant controlled the 'manner and means' of the call"); *Rogers v. Postmates Inc.*, No. 19-cv-05619-TSH, 2020 U.S. Dist. LEXIS 36626, at *9 (N.D. Cal. Mar. 3, 2020) (same); *Sheski v. Shopify (USA) Inc.*, No. 19-cv-06858-HSG, 2020 U.S. Dist. LEXIS 84433, at *12-13 (N.D. Cal. May 13, 2020) ("In order to allege a traditional agency relationship, Plaintiff would have to allege Defendant controlled or had the right to control [the entity responsible for the text messages] and, more specifically, the manner and means of the text message campaign they conducted.") (brackets in original).

Actual authority, in turn, "is limited to actions specifically mentioned to be done in a written or oral communication or consistent with a principal's general statement of what the agent is supposed to do." *Jones*, 887 F.3d at 449 (quotation marks omitted). In the context of the TCPA, this means that a principal may only be liable for an agent's TCPA violations under a theory of actual authority where the principal has specifically authorized the agent to make calls or send text messages "in violation of the TCPA." *Armstrong v. Investor's Bus. Daily, Inc.*, No. CV 18-2134-MWF (JPRx), 2020 U.S. Dist. LEXIS 76694, at *22 (C.D. Cal. Mar. 6, 2020); *see also Pascal v. Agentra, LLC*, No. 19-cv-02418-DMR, 2019 U.S. Dist. LEXIS 179359, at *8-9

(N.D. Cal. Oct. 16, 2019) (to establish actual authority a plaintiff must allege that the principal "communicated a direction" to the agent "to engage in robocalls or the robocalls were consistent with [the principal's] general statement of what [the agent] was supposed to do.") (internal quotation marks omitted); *Canary v. Youngevity Int'l*, Inc., No. 5:18-cv-03261-EJD, 2019 U.S. Dist. LEXIS 46429, at *15 (N.D. Cal. Mar. 20, 2019) (dismissing vicarious liability claims where the plaintiff had failed to plausibly plead that the defendant-principal "authorized the [call at issue] in a written or oral communication.")

Plaintiff's attempt to plead actual authority is based in large part upon the terms of a contractual agreement presented by WMI in the Texas Action in support of WMI's successful motion to dismiss. See FAC, ¶¶ 53-58. The agreement presented in the Texas Action was an Independent Agent Marketing and Referral Agreement between Synergy and BCS (the "Referral Agreement" or "Agreement"). RJN, Ex. 2. Plaintiff pleads bits and pieces of the Referral Agreement in his FAC, but as set forth in the concurrently filed Request for Judicial Notice, the Court may take judicial notice of the entire agreement submitted by WMI in the Texas Action under the incorporation by reference doctrine. *Id.*

The Referral Agreement only authorized Synergy to "promote [BCS'] product and refer merchants." RJN, Ex. 2 at p. 1. However, the Agreement does not contain any provisions specifying the manner and means by which Synergy would promote any products, or refer any merchants. RJN, Ex. 2. Plaintiff concedes, as he must, that the Agreement "did not describe the methods by which Synergy would generate leads for BCS." FAC, ¶ 58; RJN, Ex. 2. Nor does it contain any provisions vesting any measure of control over the manner or means by which Synergy would promote any products, or refer any merchants. *Id.* Moreover, Synergy BPO was prohibited under the agreement from representing "that he/she is an employee of BCS," or using BCS's logo, trademark, or trade name. RJN, Ex. 2 at p. 3, § III(b).

The court in the Texas Action provided an apt summation of why the terms of the Marketing and Referral Agreement do not establish the existence of actual authority. It explained:

WMI and BCS could not unilaterally terminate the contract. They did not specify how

BUCHALTER
A PROFESSIONAL CORPORATION
LOS ANGELES

Synergy would market its services or that Synergy must use their company's logos and branding. WMI and BCS did not provide scripts to Synergy. They also did not reimburse or cover expenses incurred by Synergy. Lastly, the contract allowed Synergy to market other companies' services in addition to WMI's. The only limitation was that Synergy was not to refer the same customer to both WMI and other companies who provided similar services.52 However, there is an explanation for this clause which goes as follows: "such a practice limits the ability to accurately determine the [customer's] receivables available to be purchased, and multiple sales of the same receivables could be made by the [customer]." Thus, there is a practical explanation for such a clause beyond just "exerting control" over Synergy's dealings. The contract, affidavit, and precedent establish that WMI and Kim did not exert control over Synergy.

*Callier v. Wide Merch. Inv., Inc.*, 671 F. Supp. 3d 736, 745 (W.D. Tex. 2023).

Plaintiff has supplied no reason in his FAC as to why the Court should conclude any differently here.

Plaintiff also tries to connect WMI with Synergy by alleging that, two days after he submitted an application to Synergy, he was e-mailed a contractual agreement by WMI.  FAC, ¶ 71, Ex. A.  At most, these allegations establish that WMI controlled the approval of applications, and the decision whether to extend a merchant advance product to a particular business.  They do not, however, support an inference that any of the WMI Defendants directed or controlled, let alone knew about Synergy's alleged telemarketing calls.  See e.g. *Barnes v. SunPower Corp.*, No. 22-CV-04299-TLT, 2023 WL 2592371, at *3 (N.D. Cal. Mar. 16, 2023) (the alleged fact that the defendant sent a "confirmatory e-mail" to the Plaintiff following a call from a third party telemarketer found insufficient to establish the defendant controlled he telemarketer's calls); *Canary v. Youngevity Int'l, Inc.*, No. 5:18-CV-03261-EJD, 2019 WL 1275343, at *7 (N.D. Cal. Mar. 20, 2019) (alleged "control" exercised by the defendant "after the call," by taking a "loan application" from the plaintiff found "insufficient to plead agency liability.")

In a similar vein, Plaintiff's FAC also contains a slew of speculative allegations about some kind of "funding call" with WMI that never actually happened.  FAC, ¶¶ 81-89. According

BUCHALTER
A PROFESSIONAL CORPORATION
LOS ANGELES

**MOTION TO DISMISS**

1  to Plaintiff, this "funding call" entails a three-way call between Synergy, WMI, and a merchant

2  during which WMI verifies the merchant's bank accounts. *Id.*  Plaintiff appears to theorize that

3  WMI's alleged control over this process somehow supports the existence of an agency

4  relationship between WMI and Synergy. However, as was the case in Canary, WMI's alleged

5  "control" over the "funding call" does not mean that WMI exercised control over Synergy's

6  alleged telemarketing calls. *Canary*, 2019 WL 1275343, at \*7.  Instead, these allegations pertain

7  to WMI's control over internal operations which occur after Synergy's alleged calls, and are

8  therefore "insufficient to plead agency liability."  *Id.*

9        The balance of Plaintiff's allegations concerning vicarious liability consists of a

10  hodgepodge of conclusory allegations.  See FAC, ¶¶ 139-160.  Courts within the Ninth Circuit

11  have repeatedly found that similar conclusory allegations are insufficient to plausibly plead

12  vicarious liability under any theory of agency.  See e.g. *Naiman v. TranzVia LLC*, No. 17-CV-

13  4813-PJH, 2017 WL 5992123, at \*11 (N.D. Cal. Dec. 4, 2017) ("The court finds that allegations

14  in . . . the complaint, which plaintiff asserts show that 'TranzVia had control over Mr. Rose's

15  actions on its behalf,' are insufficient to demonstrate that plaintiff has a plausible claim for relief

16  against TranzVia based on TranzVia's alleged vicarious liability for Rose's acts."); *Fabricant v.*

17  *Elavon, Inc*., No. 220CV02960SVWMAA, 2020 WL 11884505, at \*5–6 (C.D. Cal. Aug. 25,

18  2020) (conclusory allegations, such as "Elavon was knowingly and actively accepting the

19  business that originated through the illegal marketing calls," were "insufficient to raise a plausible

20  inference that Elavon had actual authority over Digitech."); *Jorge Valdes v. Nationwide Real Est.*

21  *Executives, Inc*., No. SACV2001734DOCJDEX, 2021 WL 2134159, at \*4 (C.D. Cal. Apr. 22,

22  2021) ("A mere conclusory statement that 'NREE is directing realtors to ... place unsolicited calls

23  to consumers,' without any supporting allegations, is insufficient."); *Winters v. Grand Caribbean*

24  *Cruises Inc*., No. CV-20-00168-PHX-DWL, 2021 WL 511217, at \*6 (D. Ariz. Feb. 11, 2021)

25  (collecting cases dismissed pursuant to Fed. R. Civ. P. 12(b)(6) "due to the presence of

26  inadequate and conclusory allegations concerning the agency relationship between the defendant

27  and the caller.")

28

**2. Plaintiff Has Failed to Plausibly Plead Apparent Authority Based On Any Alleged Manifestations By The WMI Defendants.**

"[A]pparent-authority doctrine is operative in explaining a principal's vicarious liability when a third party's reasonable belief in an agent's authority to speak or deal on behalf of a principal stems from a manifestation made by the principal and it is through statements or dealings that the agent acts tortiously." Restatement (Third) Of Agency § 7.08 (2006). "Apparent authority arises from the principal's manifestations to a third party that supplies a reasonable basis for that party to believe that the principal has authorized the alleged agent to do the act in question." *NLRB v. Dist. Council of Iron Workers*, 124 F.3d 1094, 1099 (9th Cir. 1997) (internal citation omitted). Importantly, "apparent authority cannot be established merely by showing that [the agent] claimed authority or purported to exercise it, but must be established by proof of something said or done by the [principal] on which [the plaintiff] reasonably relied." *Id; see also, Thomas v. Taco Bell Corp*., 582 F. App'x 678, 679 (9th Cir. 2014) (same); *Canary v. Youngevity Int'l, Inc*., No. 5:18-cv-03261-EJD, 2019 U.S. Dist. LEXIS 46429, at *22-23 (N.D. Cal. Mar. 20, 2019); *Abante Rooter & Plumbing Inc. v. Mahalo*, No. 18-cv-07311-VC, 2019 U.S. Dist. LEXIS 220708, at *2 (N.D. Cal. Dec. 19, 2019) ("apparent authority exists when the principal's own actions lead the plaintiff to reasonably believe that the agent has authority to perform certain acts for the principal")

Accordingly, "[j]ust because an entity sells a particular brand of products does not mean that that entity has apparent authority to speak or act for that brand." *Makaron v. GE Sec. Mfg*., No. CV-14-1274-GW(AGRx), 2015 U.S. Dist. LEXIS 75240, at *24-25 (CD. Cal. May 18, 2015). Instead, "[apparent authority is present only when a third party's belief is traceable to manifestations of the principal. The fact that one party performs a service that facilitate the other's business does not constitute such a manifestation." Restatement (Third) Of Agency § 3.03, cmt. b (2006).

Plaintiff does not point to any acts or omissions on the part of the WMI Defendants which would have led Plaintiff to believe Synergy was the authorized agent of any of the WMI Defendants. The fact that WMI allegedly e-mailed Plaintiff a contract is not the type of action

that would support a claim of apparent authority.  See e.g. *Shanahan v. Nat'l Auto Prot. Corp.*, No. 1:19-CV-03788, 2020 WL 3058088, at *6 (N.D. Ill. June 9, 2020) ("This Court remains unpersuaded that Plaintiff plausibly alleges that merely receiving a Service Plan from Matrix Warranty would cause a reasonable third-party to believe that the seller must have been their agent.")  And the alleged fact that Synergy stated that WMI was its "subsidiary" (FAC, ¶ 73) likewise does not support apparent authority.  *Naiman v. TranzVia LLC*, No. 17-CV-4813-PJH, 2017 WL 5992123, at *7 (N.D. Cal. Dec. 4, 2017) ("Apparent authority cannot be shown by allegations that the alleged agent "claimed authority or purported to exercise it.")

### 3.    Plaintiff Has Failed to Plausibly Plead Ratification.

Ratification is "the affirmance of a prior act done by another, whereby the act is given effect as if done by an agent acting with actual authority." *Kristensen v. Credit Payment Servs.*, 879 F.3d 1010, 1014 (quoting from Restatement (Third) of Agency § 4.01(1)). An act may be ratified "if the actor acted or purported to act as an agent on the person's behalf." Id. Accordingly, "[although a principal is liable when it ratifies an originally unauthorized tort, the principal-agent relationship is still a requisite, and ratification can have no meaning without it." *Batzel v. Smith*, 333 F.3d 1018, 1036 (9th Cir. 2003). Even when a principal ratifies an agent's act, "the principal is not bound by a ratification made without knowledge of material facts about the agent's act unless the principal chose to ratify with awareness that such knowledge was lacking." *Kristensen*, 879 F.3d at 1014.  Importantly, "when an actor is not an agent and does not purport to be one,' the doctrine of ratification does not apply."  *Canary v. Youngevity Int'l, Inc.*, No. 5:18-CV-03261-EJD, 2019 WL 1275343, at *9 (N.D. Cal. Mar. 20, 2019) (cleaned up).

Plaintiff's ratification theory fails because he cannot plausibly plead that Synergy was an agent of the WMI Defendants.  Indeed, the terms of the Referral Agreement alleged by Plaintiff provide that Synergy was "an independent contractor whose powers are restricted and limited by this Agreement," and did not "have any power to bind BCS to any legal obligation(s).  RJN, Ex. 2 at p. 3.  "Generally, an individual acting as an 'independent contractor,' rather than an agent, does not have the traditional agency relationship with the principal necessary for vicarious liability." *Naiman v. TranzVia LLC*, No. 17-CV-4813-PJH, 2017 WL 5992123, at *12 (N.D. Cal. Dec. 4,

2017); *Canary v. Youngevity Int'l, Inc*., No. 5:18-CV-03261-EJD, 2019 WL 1275343, at *9 (N.D. Cal. Mar. 20, 2019) ("Canary's Complaint lacks sufficient facts to plausibly allege that Cordell or DAC acted or purported to act as an agent of Youngevity for the March 15 call. This deficiency is fatal to Canary's ratification theory.")

Even assuming Plaintiff had plausibly alleged the existence of a principal-agent relationship between Synergy and the WMI Defendants, he has still failed to plausibly allege that the WMI Defendants knew Synergy was making calls in violation of the TCPA. Similar to his other claims, Plaintiff's allegation of knowledge are entirely conclusory. See FAC, ¶ 142, 153. These conclusory allegations are insufficient to plausibly plead ratification. See *Sapan v. Shore Cap. Corp.*, No. 8:23-CV-01974-FWS-JDE, 2024 WL 4002622, at *6 (C.D. Cal. Aug. 23, 2024) (Plaintiff fails to support these conclusory statements with factual support, including facts showing that Shore Capital Corporation knowingly accepted the benefit of these telemarketing calls through 'an objectively or externally observable action." (cleaned up).); *Jorge Valdes v. Nationwide Real Est. Executives, Inc.*, No. SACV2001734DOCJDEX, 2021 WL 2134159, at *5 (C.D. Cal. Apr. 22, 2021) (conclusory statements that "[NREE] knew or should have known that [the caller] was cold calling consumers without consent for [NREE's] benefit and consistent with Nationwide's expectations," found insufficient to plead ratification.).

Lastly, Plaintiff admits that the WMI Defendants terminated the Referral Agreement with Synergy after learning that Plaintiff claimed to have received more calls from Synergy after Plaintiff filed the Texas Action. FAC, ¶¶ 154, 160. That is not an act of ratification, but one of repudiation.

### 4. Plaintiff is Collaterally Estopped From Alleging Vicarious Liability.

Plaintiff's claims under both TCPA and the Texas Business and Commerce Code are premised on the allegation that third-party marketer Synergy Financial acted as the agent of WMI. FAC, ¶¶ 51-54, 179-180. However, Plaintiff is precluded from relitigating this issue. In a prior action filed in the Western District of Texas, Plaintiff admits that he brought the same claims against WMI and its officer, alleging that Synergy Financial made the same calls "on behalf of" those defendants. FAC, ¶¶ 43-44, 53. Under federal law, collateral estoppel bars relitigation

when: (1) the issue at stake are identical to the one alleged in the prior litigation; (2) the issue was actually litigated by the party against whom preclusion is asserted in the prior litigation; and (3) the determination of the issue in the prior litigation was a critical and necessary part of the judgment in the earlier action. *McQuillion v. Schwarzenegger*, 369 F.3d 1091, 1096 (9th Cir. 2004).

Each element is satisfied here. Plaintiff brought TCPA and Texas law claims based on the same calls alleged here and based on the same theory that Synergy's actions are imputed on WMI. The Texas court dismissed the case for lack of personal jurisdiction, and in doing so, necessarily resolved the question of whether Synergy acted as Defendants' agent. *Wide Merch. Inv.*, 671 F. Supp. 3d at 747 (W.D. Tex. 2023). This finding was essential to the court's conclusion that Defendants did not purposefully avail themselves of Texas jurisdiction via the conduct of Synergy, and thus personal jurisdiction was lacking. As such, the issue of agency was actually litigated, necessarily decided, and resolved by a final judgment. The Texas Court unequivocally held all factors for vicarious liability to be missing, ultimately concluding that "the offending contacts were made by Synergy and not by WMI or Kim. Synergy's contacts cannot be imputed to WMI or Kim because Synergy was not acting as their agent." *Id.*

Plaintiff had a full and fair opportunity to be heard; he filed the case, opposed the motion to dismiss, and did not appeal the ruling. Accordingly, the issue of agency was actually litigated and necessarily decided to resolve the previous jurisdictional issue. As Plaintiff is precluded from alleging that Synergy was Defendants' agent, Plaintiff's claims fail as a matter of law and must be dismissed.

## B.    Plaintiff's Successor Liability Claim Fails.

Even assuming Plaintiff can meet his burden to establish WMI is vicariously liable for Synergy's actions, Plaintiff's claims still fail because he is unable to successfully allege that WMI Holdings is a successor-in-interest of WMI. Plaintiff alleges that WMI Holdings is the successor to the dissolved WMI and therefore liable for the alleged TCPA violations committed before WMI Holdings was even formed. California law generally shields a corporation that acquires another's assets from liability for the seller's liabilities. *Pierce v. Riverside Mortg. Sec. Co.*, 25

BUCHALTER
A PROFESSIONAL CORPORATION
LOS ANGELES

**MOTION TO DISMISS**

Cal. App. 2d 248, 254 (1938). A successor corporation is not liable for the obligations of its predecessor unless one of four narrow exceptions applies: (1) the purchaser expressly or impliedly agreed to assume liabilities, (2) the transaction amounts to a consolidation or merger of the two corporations, (3) the purchasing corporation is a mere continuation of the seller, or (4) the transfer of assets to the purchaser is for the fraudulent purpose of escaping liability for the seller's debts. *Ray v. Alad Corp.,* 19 Cal. 3d 22, 28 (1977). Plaintiff references all four theories in conclusory fashion, but none are supported by well-pleaded facts.

Plaintiff's FAC relies on conclusory assertions of all four exceptions but provide no additional facts to substantiate his allegations beyond that the two entities share "the same business," "same address," and "same owner, officer, and stockholders(s)." FAC ¶¶ 7, 179-183. Plaintiff's subsequent paragraphs are nothing more than a recitation of exceptions. FAC, ¶¶ 200-201, 203. Without more, the successor liability claims must therefore be dismissed.

### 1. No Express or Implied Assumption of Liabilities.

To state a claim based on assumption of liabilities, Plaintiff must plead that WMI Holdings either expressly agreed, through a written or oral agreement, or impliedly accepted responsibility of WMI's debts. Plaintiff does not allege any such agreement between the entities. The FAC contains no allegation of any contract, assignment of obligations, novation, or conduct suggesting WMI Holdings held itself out as assuming WMI's liabilities aside from Plaintiff's conclusory allegation that "Defendant Wide Merchant Investment, Inc. expressly or impliedly agreed to assume the liabilities of Wide Merchant Investment, Inc., a dissolved corporation." FAC, ¶ 256. The FAC alleges no other facts that go to this factor. "A claim has facial plausibility when [a plaintiff] pleads factual content that allows the court to draw the reasonable inference that the [defendant] is liable for the misconduct alleged."(*lqbal*, 556 U.S. at 678. Plaintiff has not done that here.

### 2. There is No De Facto Merger.

The "de facto merger" doctrine applies where the purchasing company essentially continues the seller's business while absorbing its structure, personnel, and obligations. This exception has been invoked where one corporation takes all of another's assets without providing any

consideration that could be made available to meet claims of the other's creditors or where the consideration consists wholly of shares of the purchaser's stock which are promptly distributed to the seller's shareholders in conjunction with the seller's liquidation. *Malone v. Red Top Cab Co.* (1936) 16 Cal.App.2d 268, 272-274; *Ray*, 19 Cal.3d at 29. Although other factors are relevant to both the de facto merger and mere continuation exceptions, the common denominator, which must be present in order to avoid the general rule of successor non-liability, is the payment of inadequate consideration.

Here, beyond a simple recitation that WMI Holdings "acquired all of the assets of its predecessor" and one conclusory statement that "[n]o consideration was given for the predecessor corporation," Plaintiff does not allege additional facts to that effect. Once more, Plaintiff does not even attempt to explicate his legal conclusions. Instead, Plaintiff seems to believe his line-by-line recitation of every element of a claim is sufficient to establish the plausibility of liability, which it is not. As such, Plaintiff fails to establish this factor in his successor liability claim.

### 3. "Mere Continuation" Requires More Than Common Ownership.

California courts consistently hold that continuity of ownership is a necessary but not sufficient condition for imposing liability under the "mere continuation" exception. See *Franklin v. USX Corp.* (2001) 87 Cal. App. 4th 615, 625 ("[b]efore one corporation can be said to be a mere continuation or reincarnation of another, it is required that there be insufficient consideration running from the new company to the old"). Although other factors are relevant to both the de facto merger and mere continuation exceptions, the common denominator, which must be present in order to avoid the general rule of successor non-liability, is the payment of inadequate consideration. *Id*. at 627.

While Plaintiff does alleges that WMI Holdings shares "the same owner, office, and stockholder(s)" as WMI, this does not establish the "mere continuation" exception unless paired with factual allegations that WMI Holdings acquired the assets without paying fair value. Here, Plaintiff offers a single sentence: that WMI Holdings did not pay "fair value or consideration." FAC, ¶ 203. This legal conclusion, unsupported by any detail as to how the assets were transferred, when, under what terms, or by whom, is nothing more than a regurgitation of the

1    factor itself. Such barebones pleading is insufficient to survive dismissal.

2            **4.    Fraudulent Transfer Allegations Are Conclusory and Deficient.**

3          Under Federal Rule of Civil Procedure 9(b), allegations of "fraud or mistake must state

4    with particularity the circumstances constituting fraud or mistake." (Fed. R. Civ. P. 9(b).)

5    Therefore, "the circumstances constituting the alleged fraud [must] be specific enough to give

6    defendants notice of the particular misconduct ... so that they can defend against the charge and

7    not just deny that they have done anything wrong." *Sanford v. MemberWorks, Inc.*, 625 F.3d 550,

8    558 (9th Cir. 2010). "Averments of fraud must be accompanied by the who, what, when, where,

9    and how" of the alleged fraudulent activity. *Vess v. Ciba-Geigy Corp. USA,* 317 F.3d 1097, 1106

10    (9th Cir. 2003).

11          The FAC fails entirely to meet this standard. Plaintiff alleges that the transfer of assets

12    from WMI to WMI Holdings was "fraudulent" and done to escape liability. FAC, ¶¶ 206, 259.

13    Beyond that, Plaintiff does not identify the date of any alleged asset, the nature or value of the

14    assets transferred, or how the creditors were harmed or misled. These omissions are fatal.

15        **C.**      <u>**The Court Should Decline Supplemental Jurisdiction Over Plaintiff's Texas**</u>

16            <u>**Statutory Claims Under Choice of Law Principles and 28 U.S.C. § 1367.**</u>

17          Plaintiff brings two state-law claims under Texas Business and Commerce Code §§

18    302.101 and 305.053. These claims are grounded entirely in Texas statutory law and arise out of

19    conduct that allegedly occurred solely in Texas. Plaintiff is a Texas resident who claims he

20    received unwanted telemarketing calls in Texas on a Texas number from a third-party seller that

21    failed to comply with Texas-specific registration rules. FAC, ¶¶ 5, 36-41, 47-54, 221-226.

22    Plaintiff previously sought to litigate similar claims in the Western District of Texas,w hich

23    dismissed the case for lack of personal jurisdiction. FAC, ¶¶ 43-45. Having now filed in

24    California, Plaintiff attempts to bootstrap these state-law claims to his federal TCPA claim

25    through supplemental jurisdiction under 28 U.S.C. § 1367.

26          The Court should decline supplemental jurisdiction over the Texas claims for two

27    independent reasons: (1) Texas law substantially conflicts with California law, and California has

28    a greater public policy interest in prevailing; and (2) the Texas law substantially predominate over

1  the federal TCPA claim in both scope and proof, warranting dismissal under § 1367(c).

2      **1.  Texas and California Law Are in Direct Conflict.**

3      The California Supreme Court has indicated that the governmental interest test is "the

4  appropriate general methodology for resolving choice-of-law questions" in California. *Cassirer v.*

5  *Thyssen-Bornemisza Collection Found.*, 69 F.4th 554 (9th Cir. 2023). The California Supreme

6  Court has described the governmental interest test as involving three steps. First, a court must

7  determine "whether the relevant law of each of the potentially affected jurisdictions with regard

8  to the particular issue in question is the same or different." *Id*. Second, if the law is different, "the

9  court examines each jurisdiction's interest in the application of its own law under the

10  circumstances of the particular case to determine whether a true conflict exists." *Id*. at 561.

11  Finally, if there is a true conflict, the court "carefully evaluates and compares the nature and

12  strength of the interest of each jurisdiction in the application of its own law to determine which

13  state's interest would be more impaired if its policy were subordinated to the policy of the other

14  state." *Id*. at 108.

15      Applying the first two steps of this test, the particular issue in question is a Texas statute.

16  Specifically, the Texas Business and Commerce Code creates a right of action under Texas state

17  law for "a person who receives a communication that violates 47 U.S.C. Section 227 [or] a

18  regulation adopted under that provision ... may bring an action **in this state** against the person

19  who originates the communication ...." Tex. Bus. & Com. Code § 305.053(a)(emphasis added).

20  This statutory language reflects Texas's deliberate policy choice to allow private consumers to

21  enforce its telemarketing laws in Texas courts. In sharp contrast, California law does not permit

22  such private suits. California's analogous telemarking statute, found in Business and Professions

23  Code §§ 17590-17594 and Public Utilities Code §§ 2871-2876, provides for enforcement solely

24  by public officials. This legislative choice reflects California's policy judgment that enforcement

25  of telemarketing regulations should be left to state authorities. There is thus a direct conflict

26  between the two states' laws.

27      Given that there is a direct conflict in laws, California courts analyze the jurisdictions'

28  respective interests to determine which jurisdiction's interests would be more severely impaired if

that jurisdiction's law were not applied in the particular context presented by the case. Here, the Texas statute itself provides a limitation of "in this state," clearly intending for the statute to provide a private cause of action in Texas, not other states. Texas interests are not harmed if the Court applied California law as the Texas statute never meant to create a viable cause of action outside of Texas. However, the failure to apply California law in this context would impair California's interest and undermine its own legislative decision to limit private enforcement. Applying Texas's statute here would effectively nullify California's choice not to allow such suits under its own analogous statutes.

Alternatively, the elements of § 305.053 gives rise to a private cause of action if the TCPA was violated and "correspond[s] to the necessary elements for a TCPA claim." *Cherkaoui v. Santander Consumer USA, Inc.*, 32 F.Supp.3d 811, 815 (S.D. Tex. 2014) ("As Santander did not violate the TCPA, Santander also did not violate related Texas state law claims arising under the Texas Business and Commercial Code § 305.053 ("Texas TCPA"). The Texas TCPA proscribes only that conduct which is also prohibited by the TCPA. If no violation of the TCPA exists, there is no violation of the Texas TCPA.")  Where a plaintiff's underlying TCPA claims are not are cognizable, a plaintiff's Section 305.053 are not cognizable as well.  *Hunsinger v. Buyers*, No. 3:21-cv-1598-D, 2022 U.S. Dist. LEXIS 32319, at *18 (N.D. Tex. Feb. 24, 2022).

Here, Plaintiff's Section 305.053 claim is entirely derivative of his TCPA claims against the WMI Defendants and Kim.  See FAC, ¶ 246.  Accordingly, Plaintiff's Section 305.053 claim fails for the same reasons discussed above.

## VI.    <u>CONCLUSION</u>

Plaintiff's allegations fail as a matter of law and fail sufficiently state a claim as he is collateral estopped from bringing a vicarious liability claim, and he has not alleged facts sufficient to demonstrate successor liability. Plaintiff cannot cure these defects and thus his claims should be dismissed without leave to amend.

DATED:  April 15, 2025

BUCHALTER
A Professional Corporation

By: _____
GABRIEL G. GREEN
ARTIN BETPERA
ELAINE Y. CHENG

Attorneys for Defendants
WIDE MERCHANT INVESTMENT, INC.
WIDE MERCHANT HOLDINGS, INC.
BLUE COAST SERVICE, INC.
DAVID BOEM JOON KIM

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**<u>Certification of Compliance</u>**

The undersigned, counsel of record for Defendants Wide Merchant Investment, Inc., Wide Merchant Holdings, Inc., Blue Coast Service, Inc., and David Boem Joon Kim certifies that this brief contains 6,756 words, which complies with the word limit of L.R. 11-6.1.

DATED:  April 15, 2025

BUCHALTER
A Professional Corporation

By: _____
GABRIEL G. GREEN
ARTIN BETPERA
ELAINE Y. CHENG

Attorneys for Defendants
WIDE MERCHANT INVESTMENT, INC.
WIDE MERCHANT HOLDINGS, INC.
BLUE COAST SERVICE, INC.
DAVID BOEM JOON KIM

**MOTION TO DISMISS**